## GRAHAM *v.* WILLIAMSON.

### (*Nashville.* December Term, 1913.)

**1. CONTEMPT. Nature of proceeding.**

A contempt proceeding is both civil and criminal in its nature in that proceedings to ascertain existence of a contempt may be purely civil in the court wherein it arises, but that it is an offense against public justice, and may be proceeded against also by indictment or presentment, and in either case the punishment either by fine or imprisonment is criminal. (*Post, p.* 722.)

**2. CONTEMPT. Jurisdiction of proceedings.**

The dual nature of a contempt proceeding as both civil and criminal does not prevent its prosecution in any court wherein a contempt occurs, though it be a court of purely civil jurisdiction. (*Post, p.* 723.)

**3. CONTEMPT. Power to punish.**

The power to punish for contempt is inherent in all courts to enable them to accomplish the purposes for which they were designed, and, while it may be regulated by the legislature, it is not conferred. (*Post, p.* 723.)

**4. CONTEMPT. Appellate jurisdiction.**

Contempt proceedings for failure to obey a preliminary injunction are merely an incident to the power of the chancery court in the main controversy, and hence jurisdiction on appeal from the decision in that controversy controls such jurisdiction in the contempt proceedings, and hence, where the main controversy, under Acts 1907, ch. 82, belongs to the court of civil appeals, the contempt proceeding likewise belongs to it. (*Post, pp.* 723, 724.)

Acts cited and construed: Acts 1907, ch. 82.

## FROM MAURY.

Appeal from Chancery Court, Maury County.—J. P. ABERNATHY, Chancellor.

PEEBLES & FORGEY and J. T. WILLIAMSON, for appellant.

HOLDING & GARNER, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

It appears from the original bill in this case that a certain road in Maury county was ordered closed, as a public road, by the county authorities, and thereupon the defendant Williamson, an abutter on the south side, proceeded, on his own account, to place a fence across it; that complainant's land abuts on this road, and he has a private easement of way, regardless of the public character of the road, this easement having been in existence for more than fifty years; that the complainant thereupon prayed that an injunction be issued restraining the defendant from building the fence, and from maintaining the fence as built, so far as completed. An injunction was granted by Chancellor Wikle on *ex parte* application, and was issued in accordance with the prayer of the bill. Subsequently in this case, proceedings in contempt were brought

128 Tenn. 46

against the defendant because of his failure to obey the injunction. He filed an answer in which he averred that he had obeyed the injunction, so far as it restrained him from committing any further acts, but that the fence, so far as actually constructed, had been erected before the bill was filed, and it was insisted that, in so far as the injunction was mandatory, it was granted without jurisdiction because it was a granting of final relief on a mere *ex parte* application made at the beginning of the suit. Evidence was introduced and a judgment of contempt was awarded against the defendant, under which he was fined $25 and the costs of the proceeding. From this judgment he has appealed to this court. A motion is now made to transfer the case to the court of civil appeals, on the ground that the controversy is within the jurisdiction of that court. This motion is resisted on the ground that a contempt proceeding is a criminal proceeding, and the court of civil appeals has no jurisdiction of a criminal case.

While it is true that a contempt proceeding is of a criminal nature, it is also in the nature of a civil proceeding. By this is meant that proceedings for ascertaining the existence of a contempt may be purely civil in the court in which the contempt arises, but that it is an offense against public justice, and may be proceeded against also by indictment or presentment, and that, whichever form of procedure may be adopted, the punishment is a criminal punishment, which is either by fine or by fine and imprisonment.

The fact that the contempt proceeding has this dual nature does not prevent its prosecution in any court wherein a contempt occurs, although it be a court of purely civil jurisdiction. ˙ The power of courts to punish for contempt is of immemorial antiquity, and is inherent in all courts as a necessary power belonging to them in order to enable them to accomplish the purposes for which they were designed; that is, the orderly trial and decision of causes, the enforcement of public order, the prevention of interferences with their proceedings, and the enforcement of the due respect belonging to them as institutions of the country. While this power may be regulated by the legislature, it is not conferred. Bailey on Habeas Corpus, pp. 219-260; 2 Broom & Hadley's Commentaries, 567-569, 435, and 436; 1 Bacon's Abridgement, 473; 2 Id., 633, 634.

To what extent the power may be regulated by legislation we need not inquire, as the present case does not raise the question.

Inasmuch as the power is inherent in all courts, and each court can conduct such a matter arising in any case before it, it is apparent that the contempt proceeding in the present case was merely an incident to the power of the chancery court in the road controversy, and therefore the jurisdiction on appeal from the decision of that court in the main controversy would control the jurisdiction on the merely incidental matter of a contempt arising in the case. Since the controversy over the road would, under chapter 82 of

the Acts of 1907, belong to the Court of Civil Appeals, it follows that the contempt proceeding arising in that case would likewise belong to that court. We may add that, so far as concerns the implied suggestion that courts of chancery would not have power over a contempt proceeding, it is to be noted, as laid down in Broom & Hadley's Commentaries, supra, that originally "the whole process of a court of equity, in the several stages of a cause, and finally to enforce its decree, was, till the introduction of sequestrations, in the nature of a process of contempt, acting only *in personam*, and not *in rem.*"

The motion to transfer must therefore be granted.