# B. H. STIEF JEWELRY CO. et al. v. WALKER et al.—256 S. W. (2d) 392.

Middle Section.   October 30, 1952.

Petition for Certiorari denied by Supreme Court, March 6, 1953.

428

E. J. Walsh, Hugh C. Howser and Albert Williams, all of Nashville, for appellants.

Goodpasture, Carpenter & Dale, of Nashville, for appellees.

HICKERSON, J. The original bill was filed by several jewelers of Nashville, Tennessee, to enjoin defendants from conducting an auction sale of jewelry.

While the principal suit was pending, complainants filed three separate petitions for contempt against various parties to the suit alleging that they had violated the injunctive process of the court. Upon these petitions, answers thereto, and proceedings had thereunder, the chancellor entered the following decrees:

"Decree of November 6, 1951,

M. B. 171 P 45

| | |
|---|---|
| "B. H. Stief Jewelry Company et al. | In The Chancery Court, |
| "v. No. 69327 | Part One, |
| P. H. Walker et al., | At Nashville. |
| | Decree |

"This cause came on to be finally heard before the Honorable Thomas A. Shriver, Chancellor, on the 6th day of November, 1951, on the entire record in the cause, and the Court having heard the contempt proceedings filed against certain of the defendants at a former term, but having reserved judgment thereon pending further proceedings in the cause, it is accordingly now ordered, adjudged and decreed by the Court:

"(1) That the defendants, P. H. Wachtler, Sol Wachtler, James Mann and James W. Allen, and each of them, be and they are held to be in wilful contempt of this Court, and the citations for contempt issued against them be and they are hereby sustained.

"(2) That under and pursuant to the first citation for contempt issued the 16th day of November, 1950, the defendants, P. H. Wachtler, Sol Wachtler, and James Mann, be and they are hereby held to have violated the spirit and purpose of the Court's injunction but, in order to give them the benefit of any possible doubt as to the wilfullness of their violations, the charges are dismissed, but at their cost, for which execution may issue.

"(3) That under and pursuant to the second citation for contempt issued the 17th day of November, 1950, each of the defendants, P. H. Wachtler, Sol Wachtler, and James Mann, be and they are hereby fined the sum of Fifty ($50.00) Dollars each, which sum each of said defendants will forthwith pay into the hands of the Clerk and Master of this Court, together with the costs incident to such contempt proceeding against him, for which execution may issue.

"(4) That the defendant, James W. Allen, be and he is fined the sum of Fifty ($50.00) Dollars, but extenuating

circumstances appearing, the fine of this defendant is by the Court remitted, on condition that the said James W. Allen pay all the costs incident to the contempt proceedings against him, for which execution may issue.

"To all of the foregoing decree, excepting only that part remitting the fine of James W. Allen, the defendants, P. H. Wachtler, Sol Wachtler and James Mann except, and pray an appeal therefrom to the next term of the Court of Appeals sitting at Nashville, which appeal is by the Court granted upon condition that defendants execute appeal bonds as required by law and otherwise perfect their appeals within thirty days from the entry hereof."

"Decree of December 5, 1951,

|  |  |
|---|---|
| M. B. 171 P 135 | In Part One Of |
| "B. H. Stief Jewelry | The Chancery Court |
| Company et al. | At Nashville |
| v. | Rule No. 69327 |
| P. H. Walker et al. | |

"In this cause, by a decree entered on November 6, 1951, James W. Allen was adjudged in contempt of court and was fined the sum of $50.00 but the court remitted the said fine, and the said James W. Allen excepts to that part of said decree which adjudicates that he was in contempt of this Court, and he prays an appeal therefrom to the Court of Appeals sitting in Nashville which appeal is by the Court granted upon the execution by the said James W. Allen of an appeal bond as required by law and otherwise perfecting his appeal.

"In the same decree entered November 6, 1951, the defendants P. H. Wachtler, Sol Wachtler, and James

Mann were adjudged guilty of contempt of court and were fined $50.00 each, to which the said three individuals excepted, and their prayer for appeal was granted upon their execution of a bond and otherwise perfecting their appeals within thirty days, and now upon application of the said P. H. Wachtler, James Mann and James W. Allen for an extension of time within which to file a Bill of Exceptions their said prayer is granted, and the said four defendants are given sixty days from this day within which to file a Bill of Exceptions in order to complete their appeal.''

James Mann, James W. Allen, P. H. Wachtler, and Sol Wachtler filed appeal bonds.

We have found the record before us very confusing. For example, the first assignment of error is:

''The Chancellor erred in adjudging P. H. Walker guilty of contempt of Court and in ordering him to pay a fine of $50.''

We have found no decree of the chancellor by which P. H. Walker was adjudged guilty of contempt and ordered to pay a fine of $50. Furthermore, P. H. Walker filed no appeal bond.

There is no assignment of error filed in behalf of James Mann.

A motion to transfer the cause to the Supreme Court has been filed by appellees, as follows:

''Come the appellees and respectfully suggest to the Court that this cause is improperly appealed to this Court because:

'' (1) The appeal is from a decree adjudging appellants in contempt of court and fixing their pun-

ishment by fine, which proceedings are in their nature criminal and appeals from said judgment accordingly must be addressed to and heard by the Supreme Court.

"(2) No final determination of the principal case has been made, and it is not on appeal."

The situation is this: There has been no final decree in the chancery court upon the principal case. The cause is before this court upon an appeal from the decree of the chancery court adjudging James W. Allen, P. H. (Phillip) Wachtler, and Sol (Saul) Wachtler guilty of contempt and ordering them to pay a fine of $50 each as punishment for their contempt. The alleged acts of contempt grew out of and were ancillary to the proceedings in the principal case; that is, the bill to enjoin the defendants from conducting an auction sale of jewelry.

To determine the question of practice made by the motion to transfer to the supreme court, we have considered the following decisions of our supreme court: Graham v. Williamson, 128 Tenn. 720, 164 S. W. 781; Collier v. City of Memphis, 160 Tenn. 500, 26 S. W. (2d) 152; Schoolfield v. Darwin, Judge, 182 Tenn. 192, 185 S. W. (2d) 509; Metcalf v. Eastman, 190 Tenn. 206, 228 S. W. (2d) 490.

Graham v. Williamson was an injunction suit. Contempt proceedings were filed in the principal suit charging that defendant had violated the injunction issued in the cause. Defendant was adjudged guilty of contempt and ordered to pay a fine of $25 by the lower court. To review that decree, defendant appealed to the supreme court.

A motion was sustained transferring the case from the supreme court to the court of civil appeals. The supreme court said [128 Tenn. 720, 164 S. W. 782]:

"Inasmuch as the power is inherent in all courts, and each court can conduct such a matter arising in any case before it, it is apparent that the contempt proceeding in the present case was merely an incident to the power of the chancery court in the road controversy, and therefore the jurisdiction on appeal from the decision of that court in the main controversy would control the jurisdiction on the merely incidental matter of a contempt arising in the case. Since the controversy over the road would, under chapter 82 of the Acts of 1907, belong to the Court of Civil Appeals, it follows that the contempt proceeding arising in that case would likewise belong to that court."

In Collier v. City of Memphis, the court recognized the rule that a contempt proceeding is criminal in nature, but held appellate review of a decree for contempt was governed by Chapter 100, Acts of 1925, Code Section 10618; and the supreme court retained jurisdiction on the ground that the appeal did not involve a review or determination of the facts. Code Section 10618.

In Schoolfield v. Darwin, Judge, the supreme court assumed jurisdiction of an appeal to review a judgment for contempt and stated as its reason for assuming jurisdiction, as follows:

"When the case was called in this Court we did not understand how it originated and transferred it to the Court of Appeals. A petition to rehear was filed by the State in which Mr. Schoolfield joined, showing that the fine for contempt was imposed on account of an incident transpiring in the progress of

a case in the criminal court. This being so, the contempt proceeding against Mr. Schoolfield is merely ancillary to the criminal prosecution. Since appellate jurisdiction of the main controversy would have been in this Court, rather than in the Court of Appeals, we have appellate jurisdiction of the incidental matter of contempt arising in the main case. Graham v. Williamson, 128 Tenn. 720, 164 S. W. 781; McCormick v. Phillips, 140 Tenn. 268, 204 S. W. 636, L. R. A. 1918F, 791.

"The petition to rehear the order of transfer is accordingly granted and that order referring the case to the Court of Appeals is set aside."

It will be seen in the Schoolfield case that the court decided the question of appellate jurisdiction to review a decree for contempt under the authority of the statute which declares the jurisdiction of the court of appeals. Code Section 10618. This court, by express terms of the statute, has jurisdiction in civil cases only and the contempt proceeding in the Schoolfield case grew out of a trial in a criminal case.

The last decision on this question, which we have found, is Metcalf v. Eastman, supra. In the Metcalf cases there had been a final decree on the merits in the principal case in the chancery court; but there was no appeal from that decree. The contempt proceeding grew out of incidents which occurred in the main proceeding. In retaining jurisdiction of the appeal in the contempt proceeding, the supreme court said:

"Had there been an appeal from the decision of the main controversy the jurisdiction on that appeal would control the jurisdiction on the incidental matter of contempt arising during the course of litigation of the main controversy. Graham v. Williamson,

128 Tenn. 720, 164 S. W. 781; Schoolfield v. Darwin, Judge, 182 Tenn. 192, 185 S. W. (2d) 509. However, in the instant case, as above noted, there was no appeal from the decision of the main controversy, the appeal being only by the lawyer adjudged in contempt, and being only from the decree adjudging him guilty of contempt. In that situation the appeal is to this Court in contempt proceedings since those proceedings are in their nature criminal. Collier v. City of Memphis, 160 Tenn. 500, 26 S. W. (2d) 152.''

██ In the case on trial, an appeal from a decree of the chancery court on the merits in the main controversy would lie to the court of appeals. We hold the correct rule to be: When a contempt proceeding grows out of a principal case, and there has been no final decree in the principal case in the lower court; but the contempt proceeding is heard and a final decree is entered thereon in the lower court from which an appeal is granted; appellate jurisdiction to review that decree for contempt will be in the appellate court which would have jurisdiction to review the decree of the trial court in the principal suit.

Applying that rule, the motion to transfer is denied.

The appeal presents only one question for our determination: Did appellants violate the injunction?

By the first writ of injunction P. H. Walker, James Mann, James W. Allen, and Phillip Wachtler were enjoined from ''the conduct of the auction sale now being held at the place of business of Jensen & Jeck Company.'' This injunction was served on these parties, ''November 15, 1950, at 2:10 P. M..''

The second writ of injunction, served on P. H. Walker, James Mann, and Phillip Wachtler on ''November 17, 1950, time 4:30 P. M.,'' enjoined these parties ''from

conducting any sale of any kind or nature whatsoever at Jensen & Jeck Company, Nashville, Tennessee, or on its premises and from participating in any way in any such sale pending further orders of this court.''

The third writ of injunction, served on James W. Allen on ''November 20, 1950, at 1:05 P. M.,'' enjoined ''James W. Allen, his Attorneys, agents and employees, from conducting any sale of any kind or nature whatsoever at Jensen & Jeck Co., Nashville, Tennessee, or on its premises, and from participating in any way in any such sale pending further orders of this court.''

Three petitions for contempt were filed. There is no evidence to support any charge in these petitions, except one. It was charged that after the service of the injunction by which appellants were enjoined from conducting, ''the auction sale now being held at the place of business of Jensen & Jeck Company,'' appellants, defendants below, continued to conduct a sale in this manner:

''The auctioneer would select an item of merchandise, hold it up for the public view, state its purported retail value, state the price which he would take for it and cry that the first one that holds up his hand gets this piece of merchandise. Sometimes several hands would go up and he would dispose of several items at the same figure.''

This last charge was proved. In fact, it was admitted to be true.

After the service of the injunction appellants contacted their lawyers, Mr. E. J. Walsh and Judge Albert Williams. These lawyers advised them that they could sell their merchandise at a fixed or flat price and not violate the injunction. Appellants strictly and scrupulously followed that advice. Thereafter, each article was marked at a fixed or flat selling price. The article was

sold at that price or it was not sold. No higher or smaller offer was accepted or considered. This method of sale was explained in great detail by appellants to their customers. The conclusion of the pleader in the petitions for contempt that appellants "made facetious remarks with reference to the injunction, indicating disdain for the process of the court," finds no support in the evidence.

Code Section 10119(3) provides:

"Contempts.—The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:

\* \* \* \* \* \*

"(3) The wilful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said courts."

In Nashville Corporation v. United Steelworkers of America, 187 Tenn. 444, 215 S. W. (2d) 818, 820, the court said:

"Regardless of whether or not the injunction was 'irregular or erroneous', 'it must while it continues in force be obeyed.' 28 Am. Jur., Sec. 330, p. 504. In a note to the above quoted statement numerous cases are cited as authority therefor. See also Vanvabry v. Staton, 88 Tenn. 334, 12 S. W. 786; Weidner v. Friedman, 126 Tenn. 677, 151 S. W. 56, 42 L. R. A., N. S., 1041; and Underwood's Case, 21 Tenn. 46, which are to the same effect. The obvious reason for this almost unanimous holding, is stated by Chancellor Gibson as follows:

" 'The power to punish for contempt is one of the highest prerogatives of a court of justice; and, upon

its bold and prudent exercise depend the respect, the dignity, and efficiency of courts as arbiters of human rights. The mandates of a Court of Chancery must in all cases be obeyed, according to the spirit of the decree, promptly, faithfully and without question, or evasion. The party, upon whom the order or command of the court operates, is not allowed to speculate upon the equity of the bill, or the legality or regularity of the order or decree, or of the writ issued thereon; but his simple duty is to obey; and when he disobeys it is a duty the court owes to itself and to the public to punish him at once.' "

In the "second petition for citation for contempt" complainants allege:

"Section 3 of Article I of Chapter 5 of the Code of The City of Nashville, which is one of the ordinances pleaded and relied on in the original bill, is as follows:

" ' "Selling at Auction" shall mean the offering for sale or selling of such property by the method known as "downhill selling" by which is meant first offering any article at a higher price than offering the same at successive lower prices until a bid is secured.'

"This section has been amended by addition of the following:

" ' "Selling at Auction" shall also mean the offering for sale or selling of such property to the highest bidder.' "

In 7 C. J. S., Section 1, pages 1239-1240, Auctions and Auctioneers, Section 1a, it is said:

"An auction is a public sale of property to the highest bidder, by one licensed and authorized for that purpose. The main purpose of auction sales is to obtain the best financial returns for the owner of

the property sold; and they are based on the purpose and policy of obtaining the worth of property by free and fair competition among the bidders; and hence competition among a number of bidders is a necessary element.''

The word ''auction'' is defined in 5 Am. Jur. 446, Auctions, Section 2:

''An auction, as usually defined, is a public sale of property to the highest bidder, although there is a form of auction commonly known as a 'Dutch auction' where the property is put up at a price greater than its value and the price is then gradually lowered until someone closes the sale by accepting the offer and thus becoming the purchaser.''

In an annotation in 31 A. L. R. 301, under the title, ''What constitutes sale at auction,'' this rule is stated:

''Competitive bidding is the essence of an auction, and one who sells by public outcry, but at fixed prices, is not within a regulation of auctioneers.''

See also annotation ''Law of Auction Sales,'' 131 Am. St. Rep. 479.

■ ■ It is our conclusion that appellants cannot be found guilty of conducting an auction sale because their method of sale did not follow the conventional or usual retail method of selling merchandise ''across the counter.'' Competitive bidding, up or down, is an essential element of an auction sale. A sale at fixed or flat prices, no higher nor lower, is not an auction sale regardless of the manner in which the merchandise is offered for sale at the fixed price.

The decree of the chancery court whereby P. H. (Phillip) Wachtler, Sol (Saul) Wachtler, and James W. Allen were adjudged guilty of contempt and punished by fine

of $50 is reversed. The petitions for contempt are dismissed. These appellants are discharged. The complainants below will pay all costs incident to the contempt proceedings. Remand for further proceedings.

Felts and Howell, JJ., concur.