IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
(HEARD AT MEMPHIS)



FILED

March 20, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

**FOR PUBLICATION**

**Filed:** ___March 20, 2000___

| | |
|---|---|
| DOROTHY JANE AHERN (PIEROTTI), ) | |
| ) | |
| PLAINTIFF-APPELLEE, ) | SHELBY COUNTY CIRCUIT |
| ) | |
| v. ) | Hon. D'Army Bailey, Judge |
| ) | |
| ROBERT FRANCIS AHERN, ) | No. W1997-00233-SC-R11-CV |
| ) | |
| DEFENDANT-APPELLANT. ) | |

FOR DEFENDANT-APPELLANT:     FOR PLAINTIFF-APPELLEE:

JOHN R. CANDY                  ROBERT A. WAMPLER
Collierville                       MARK A. FULKS
                                 Memphis
GARLAND ERGÜDEN
Memphis

W. MARK WARD
Memphis


# O P I N I O N


AFFIRMED IN PART; REVERSED IN PART.           HOLDER, J.

**OPINION**

We granted this appeal to determine: 1) whether the constitutional protections against double jeopardy prevented the defendant's retrial for criminal contempt after testimony had been taken by one judge and the case was then transferred to a second judge; and 2) whether the defendant was entitled to a jury trial when the defendant was tried for criminal contempt under Tenn. Code Ann. § 29-9-102 et seq. (1980).

We conclude that the constitutional protections against double jeopardy prohibited the defendant's retrial for criminal contempt because testimony was taken prior to the transfer of the case to a second judge. Accordingly, we reverse the defendant's convictions and vacate his sentences. We also conclude that the defendant was not entitled to a jury trial under Tenn. Code Ann. § 29-9-102.[1]

## I. FACTUAL and PROCEDURAL BACKGROUND

Dorothy Jane Ahern Pierotti ("Pierotti") and Robert Francis Ahern ("Ahern") were divorced June 25, 1993. A marital dissolution agreement ("MDA") was approved by Circuit Judge D'Army Bailey in Division 8. The divorce decree incorporating the MDA gave Pierotti sole custody of the couple's two children. The MDA also directed Ahern to pay monthly child support, a majority (88.5%) of the health-related costs not covered by insurance, and a majority (88.5%) of the children's school tuition. Ahern was required to pay Pierotti alimony in solido in the sum of $63,751 payable in monthly installments of $1,000.

---

[1] Oral argument was heard in this case on November 17, 1999, in Memphis, Shelby County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

On November 4, 1996, Pierotti filed a petition for writ of scire facias alleging that Ahern was in wilful contempt of the court's order directing him to pay alimony and child support. In February 1997, Pierotti amended the petition seeking to have Ahern found in both civil and criminal contempt. Ahern denied that he was in contempt and demanded a jury trial. He contended that many of the debts alleged by Pierotti were discharged in his bankruptcy action which was final on January 3, 1996. He further alleged that he had not been asked to pay for any health-related bills for his children and additionally argued that orthodontic care was not an expense contemplated by the final divorce decree.

On March 17, 1997, Pierotti filed a notice asking the court and jury to find Ahern in civil and criminal contempt of the court order and to punish him accordingly under Tenn. Code Ann. §§ 16-1-103, 29-9-101–106. Pierotti also asked the court for a hearing to determine the dischargeability of Ahern's pre-bankruptcy petition debts.

Judge Bailey, who had approved the MDA, transferred the case to Circuit Judge Kay Robilio in Division 5 prior to the trial for contempt. After transfer of the case, Ahern waived his right to a jury trial. Judge Robilio began the trial and heard testimony from Pierotti. During the proceedings, counsel for the parties argued over both the need for an interpretation of the provisions in the MDA and the dischargeability of the debts in Ahern's bankruptcy. After a recess taken during Pierotti's testimony, Judge Robilio sua sponte transferred the case back to Division 8 stating:

> This Court is of the opinion that post-divorce matters, especially in a situation such as this one, are more properly heard by the judge who heard the divorce, and this – and Division 5 is transferring this back to Division 8, which is now in a posture to accommodate the parties.

When Pierotti's counsel asked, "You mean today?" the judge responded, "I mean immediately. I mean right this moment." The attorney thanked the judge, and the judge asked for the case file. The transcript indicates the proceedings then recommenced in Division 8 before Judge Bailey.

After Pierotti's counsel gave Judge Bailey a history of the case, Ahern's counsel objected to the case proceeding before Judge Bailey and sought either dismissal on double jeopardy grounds or a retransfer to Division 5. Ahern's counsel argued that jeopardy had attached when the first witness testified in Division 5. Judge Bailey ruled that Ahern's double jeopardy claim was waived. Ahern renewed his request for a jury trial. Judge Bailey ruled that Ahern had waived his right to a jury trial as well. During the bench trial in Division 8, the proof demonstrated that Ahern failed to make payments for his children's school tuition, his son's braces, and some other dental expenses not covered by insurance. Ahern attempted to testify that the alimony obligation had been discharged in his bankruptcy action. Pierotti's counsel objected to the testimony, and Judge Bailey ruled that the testimony was irrelevant. Ahern testified that he did not have the money to make payments because he was paying his monthly child support, supporting his new wife and four children, and paying a mortgage.

Ahern made an offer of proof demonstrating that he filed his bankruptcy action in October 1993; that Pierotti filed a claim in the amount of $72,481.95; that the claim was treated as a general, unsecured claim; that Pierotti received a distribution of $13,643 through the bankruptcy court; and that Ahern received a discharge as to all dischargeable debts. Pierotti's proof of claim characterized the debt as both a division of property and as spousal support and maintenance.

Judge Bailey issued a written order July 22, 1997, finding Ahern guilty of criminal contempt beyond a reasonable doubt for failure to pay both child

4

support and alimony.[2] The only basis cited for the finding of criminal contempt was Tenn. Code Ann. § 29-9-102(3) (allowing the court to punish for contempt of court for "the wilful disobedience or resistance of any . . . party . . . to any lawful . . . order of [the] court."). The trial judge found that Ahern had the ability to meet his financial obligations "at all times since the entry of the Final Decree."[3] The judge characterized the contempt as "deliberate, calculated and willful." The court deemed each failure to pay monthly alimony a separate act of criminal contempt. Ahern was sentenced to five days for each of the twenty-eight "counts" of contempt for a total of 140 days.[4] With regard to the contempt for the children's unpaid school tuition and health-related costs, the court imposed a 180-day sentence to run concurrently with the 140-day sentence. The trial court awarded Pierotti a money judgment for $17,586.60 representing $13,828.12 in unpaid school tuition through May 1997 and $3,758.48 for unpaid health-related costs through November 1996. The trial court also awarded Pierotti a money judgment of $28,271.46 for unpaid alimony through December 31, 1996.[5] The judgment is against Ahern and his software company, which guaranteed the payment of the alimony in the MDA. Pierotti was also awarded attorney's fees.

---

[2]The judge also ruled that the objection to the bankruptcy court's order of reference for an interpretation of the MDA was waived. The judge found that the MDA "speaks for itself" and that the alimony ordered in the MDA was necessary and reasonable.

[3]The trial court found that between the years 1994 and 1997 Ahern earned $80,000 annually; he served as the president and owner of a software management company; he was paying a $135,000 mortgage on a house valued at $170,000; and he paid $5,000 to a woman who alleged that Ahern physically abused her.

This ruling calls into question Judge Bailey's appointment of the public defender's office. According to the briefs filed by Ahern, he is represented by three attorneys, John R. Candy, Collierville, Garland Ergüden, Memphis, and W. Mark Ward, Memphis. An order in the record indicates that a "public defender" was appointed to represent Ahern, but the order did not identify an attorney by name. No affidavit supporting the defendant's indigency and right to public representation is on file. It is unclear whether an attorney from the public defender's office is representing Ahern.

[4]We note that the trial court found each failure to pay a monthly installment of alimony to be a separate act of contempt and imposed consecutive sentences for each "count." The appropriateness of creating multiple counts to impose more than a 10-day sentence under Tenn. Code Ann. § 29-9-103 is not an issue that is presently before us.

[5] In paragraph 2 of the trial court's order, Ahern was found to be in arrears on alimony through December 31, 1997, and in paragraph 6 he was found to be in arrears through December 31, 1996. Since the trial court's order was entered on July 22, 1997, the date in paragraph 2 appears to be a typographical error. The award of $28,271.46 represents the arrearage through December 31, 1996.

Ahern appealed the judgment to the Court of Appeals arguing that his right to be free from double jeopardy was violated, his right to a jury trial was violated, and the exclusion of proof regarding his prior bankruptcy was improper. Affirming the trial court in part, the appellate court ruled that Ahern waived his double jeopardy claim by failing to object in Division 5 when the case was transferred to Division 8. As to the jury trial issue, the appellate court ruled that Ahern did not have a right to a jury trial in a criminal contempt proceeding. Lastly, the appellate court ruled that the trial court committed reversible error by excluding evidence of Ahern's prior bankruptcy proceeding.[6] Based upon the evidentiary error, the court reversed the finding of criminal contempt for failure to pay alimony and remanded the case to the trial court. Additionally, the appellate court noted that it was unable to determine how the trial court arrived at the jail sentence for contempt for failure to pay child support under the statute cited in the order. The court resolved the question by concluding that Ahern had not challenged the length of his sentence on appeal. Thus, that conviction and sentence remained intact.

## II. ANALYSIS

In this Court, Ahern argues that protections against double jeopardy prohibited his retrial in Division 8. As to the allegations of criminal contempt based upon his failure to pay child support, he contends that he had the right to a jury trial because of the possibility of confinement. In the alternative, he argues that he had a right to a jury trial under Brown v. Latham, 914 S.W.2d 887 (Tenn. 1996), because it appeared that he was sentenced for failure to pay child support under Tenn. Code Ann. § 36-5-104(a) as opposed to the general contempt provisions under Tenn. Code Ann. §§ 29-9-102–103. Neither party

---

[6]The Court of Appeals held the evidence of Ahern's bankruptcy was relevant because the disobedience to a court order must be wilful for the trial court to find contempt under Tenn. Code Ann. § 29-9-102(3). According to Ahern, he believed that the alimony debt had been discharged in his bankruptcy. The court reasoned that the proffered testimony tended to show that Ahern did not wilfully violate the trial court's order.

addressed the appellate court's ruling reversing and remanding to the trial court because of the exclusion of evidence of Ahern's prior bankruptcy proceeding.

## A. Applicable Statutory Provisions for Contempt

An act of contempt is a wilful or intentional act that offends the court and its administration of justice.  Tenn. Code Ann. § 29-9-102; see Graham v. Williamson, 164 S.W. 781, 782 (Tenn. 1914).  Traditionally, contempt has been classified as civil or criminal depending upon the action taken by the court to address the contempt.  Title 29, Chapter 9 of the Tennessee Code on Remedies and Special Proceedings provides the grounds for contempt and the remedies available to the court.  Tenn. Code Ann. §§ 29-9-102–104.  Tennessee Code Annotated § 29-9-102 provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice.
>
> (2) The willful misbehavior of any of the officers of said courts, in their official transactions.
>
> (3) The willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said courts.
>
> (4) Abuse of, or unlawful interference with, the process or proceedings of the court.
>
> (5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them.
>
> (6) Any other act or omission declared a contempt by law.

Thus, to find contempt under this statute, a court must find the misbehavior, disobedience, resistance, or interference to be wilful.  For the court

7

to find that Ahern's failure to pay alimony and child support was contemptuous, the court first must determine that Ahern had the ability to pay at the time the support was due and then determine that the failure to pay was wilful.

After a finding of contempt, courts have several remedies available depending upon the facts of the case. A court can imprison an individual to compel performance of a court order. This is typically referred to as "civil contempt." This remedy is available only when the individual has the ability to comply with the order at the time of the contempt hearing. Tenn. Code Ann. § 29-9-104;[7] see also Garrett v. Forest Lawn Memorial Gardens, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979). Thus, with civil contempt, the one in contempt has the "keys to the jail" and can purge the contempt by complying with the court's order. Tenn. Code Ann. § 29-9-104; Garrett, 588 S.W.2d at 315. In civil contempt, the imprisonment is meted out for the benefit of a party litigant. See Shiflet v. State, 217 Tenn. 690, 693, 400 S.W.2d 542, 543 (1966).

A court can also imprison and/or fine an individual simply as punishment for the contempt. This remedy is commonly referred to as "criminal contempt." Unless otherwise provided, the circuit, chancery, and appellate courts are limited to imposing a fine of $50.00 and to imprisoning an individual for not more than ten days. Tenn. Code Ann. § 29-9-103.[8] A party who is in criminal contempt

---

[7]Tennessee Code Annotated § 29-9-104 provides:

> **Omission to perform act. –** (a) If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, he may be imprisoned until he performs it.
> (b) The person or if same be a corporation, then such person or corporation can be separately fined, as authorized by law, for each day it is in contempt until it performs the act ordered by the court.

[8]Tennessee Code Annotated § 29-9-103 provides:

> **Punishment.–** (a) The punishment for contempt may be by fine or by imprisonment, or both.
> (b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29-9-108, all other courts are limited to a fine of ten dollars ($10.00).

cannot be freed by eventual compliance.  See <u>Shiflet</u>, 217 Tenn. at 693, 400 S.W.2d at 543.

In addition to the contempt provisions in Title 29, the legislature has provided a specific statute to address the situation in which an obligor fails to comply with a child support order.  Tennessee Code Annotated § 36-5-104 states:

> (a)  Any person, ordered to provide support and maintenance for a minor child or children, who fails to comply with the order or decree, may, in the discretion of the court, be punished by imprisonment in the county workhouse or county jail for a period not to exceed six (6) months.

> (b)  No arrest warrant shall issue for the violation of any court order of support if such violation occurred during a period of time in which the obligor was incarcerated in any penal institution and was otherwise unable to comply with the order.

Pierotti asked the trial court to find Ahern in both civil and criminal contempt pursuant to Tenn. Code Ann. §§ 16-1-103, 29-9-101–106.  The trial court found that Ahern had the ability to meet his financial obligations "at all times since the entry of the Final Decree."  The court found that Ahern's failure to pay was "deliberate, calculated and willful" because Ahern had the ability to pay alimony and child support.  The court concluded that Ahern was guilty of criminal contempt.

The trial court's order cited Tenn. Code Ann. § 29-9-102(3) as the basis for the contempt convictions but did not cite the specific sentencing provisions upon which it relied.  As to the failure to pay child support, the trial court sentenced Ahern to 180 days, or six months, in jail.  Under Tenn. Code Ann. §§ 29-9-102(3), -103, the trial court was without authority to issue such a sentence.  Tennessee Code Annotated § 29-9-103 specifically limits circuit courts to a maximum of a $50 fine and ten days in jail.  While Tenn. Code Ann.

§ 36-5-104 does provide for a penalty of up to six months in jail for failure to pay child support, that provision was neither relied upon by Pierotti nor cited by the trial court in its ruling. Although the Court of Appeals correctly noted that Ahern did not appeal the length of his sentences, his double jeopardy claim has the potential to invalidate both the sentence imposed for failure to pay child support and the sentence imposed for failure to pay alimony.

### B. Double Jeopardy

Ahern argues that protections against double jeopardy prohibited his trial for criminal contempt in Division 8 after the termination of his first trial in Division 5 without his consent. We agree.

The double jeopardy clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V, amend. XIV. Article 1, § 10 of the Tennessee Constitution provides that "no person shall, for the same offence, be twice put in jeopardy of life or limb."

Tennessee law is settled that constitutional provisions against double jeopardy protect an accused against a second prosecution for the same offense after conviction, a second prosecution for the same offense after an acquittal, and multiple punishments for the same offense. State v. Pennington, 952 S.W.2d 420, 422 (Tenn. 1997); State v. Mounce, 859 S.W.2d 319, 321 (Tenn. 1993); Whitwell v. State, 520 S.W.2d 338, 341 (Tenn. 1975). In jury proceedings, jeopardy attaches when the jury is sworn. Pennington, 952 S.W.2d at 422; State v. Knight, 616 S.W.2d 593, 595 (Tenn. 1981). In non-jury proceedings, jeopardy attaches when the first witness testifies. Crist v. Bretz, 437 U.S. 28, 37, 98 S. Ct. 2156, 2162, 57 L. Ed. 2d 24 (1978); Pennington, 952

10

S.W.2d at 422. In this case, Pierotti testified in Division 5 prior to the transfer to Division 8.

## 1. Consent

There are recognized exceptions to the prohibition against double jeopardy. For example, a retrial is permitted when the defendant has actively sought or consented to a mistrial. United States v. Scott, 437 U.S. 82, 93, 98 S. Ct. 2195, 57 L. Ed. 2d 65 (1978); Knight, 616 S.W.2d at 596; State v. Nixon, 669 S.W.2d 679, 681 (Tenn. Crim. App. 1983). "In such a case the accused has deliberately elected to forego his right to have guilt or innocence determined by the first trier of fact." Knight, 616 S.W.2d at 596.

Pierotti argues that Ahern essentially consented to the transfer and the retrial by not objecting in Division 5 when Judge Robilio announced she was re-transferring the case to Judge Bailey. Pierotti argues that this consent is supported by Ahern's failure to object coupled with his assertions that there were ambiguities that needed to be resolved by determining the original court's intent.

Pierotti was the first witness called to testify in Division 5. After a short recess during her testimony, Judge Robilio announced sua sponte that she was returning the case to Judge Bailey stating, "This Court is of the opinion that post-divorce matters, especially in a situation such as this one, are more properly heard by the judge who heard the divorce . . . ." When asked by Pierotti's counsel when the transfer would take place, the trial court said the case was being transferred immediately. A recess was taken and the proceedings recommenced in Division 8. After Pierotti's counsel advised Judge Bailey as to the status of the case, Ahern's counsel objected to the trial of the case in Division 8 on double jeopardy grounds. Alternatively, he renewed his request for a jury trial. The trial court overruled Ahern's objection and ruled that his right to a

jury trial had been waived. Judge Bailey conducted a trial, found Ahern guilty of contempt, and sentenced him to confinement.

The record reflects that there was little time for Ahern's counsel to object when Judge Robilio announced the transfer back to Division 8. Pierotti's counsel was able to ask for a clarification as to when the transfer would take place, but Ahern's counsel simply does not appear to have had an opportunity to object until the parties appeared in Division 8. As soon as Judge Robilio answered one question, she asked for the case file to complete the transfer. We conclude that Ahern did not consent to the transfer to Division 8.

## 2. Manifest Necessity

Manifest necessity is another exception to the prohibition against double jeopardy. Mounce, 859 S.W.2d at 321. Examples of manifest necessity include the inability of a jury to render an impartial verdict, id.; Nixon, 669 S.W.2d at 681; Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977); a jury's inability to reach a verdict, Mounce, 859 S.W.2d at 321; and misconduct by defense counsel leaving no feasible alternative except to halt the proceedings, see Arizona v. Washington, 434 U.S. 497, 514-516, 98 S. Ct. 824, 834-35, 54 L. Ed. 2d 717 (1978); United States v. Dinitz, 424 U.S. 600, 611-612, 96 S. Ct. 1075, 1081-82, 47 L. Ed. 2d 267 (1976). "When a mistrial is declared because of a manifest necessity, double jeopardy is not violated when the defendant is retried even if he objected to the mistrial." Mounce, 859 S.W.2d at 321.

Pierotti contends that there was a manifest necessity to declare a mistrial and transfer the case. Pierotti contends that Ahern made repeated assertions in Division 5 that the MDA and a master's report referenced in the MDA were ambiguous as to whether payments to Pierotti were alimony or property division. Pierroti argues that Judge Bailey was in a better position to resolve these issues

12

because of the long history of litigation between the parties. This controversy, Pierotti contends, created the manifest necessity that allowed the transfer and retrial in Division 8.

We point out that this divorce was based upon irreconcilable differences and involved an MDA. In an irreconcilable differences divorce under Tenn. Code Ann. § 36-4-103(3)(b), the trial court approves the agreement of the parties unless the court finds the agreement does not equitably divide the parties' marital property or does not adequately and sufficiently provide for the support of the parties' children. The "intent" of the trial court is expressed through the trial court's approval and incorporation of the MDA into the divorce decree. Tenn. Code Ann. § 36-4-103. In the event the MDA is ambiguous, it is the intent of the parties that is relevant, not the intent of the trial judge. The record is devoid of evidence that would permit a conclusion that Division 8 was in a better position to decide the issues presented. Moreover, the record does not reflect that the trial judge in Division 5 was unable to hear the case and decide the issues. Accordingly, there was no manifest necessity to transfer the case.

The record clearly demonstrates that the first witness had begun to testify in the non-jury trial in Division 5. Thus, we find that jeopardy attached. There was neither consent by Ahern nor a manifest necessity to declare a mistrial and to transfer the case. We hold that the trial court in Division 8 erred in denying Ahern's motion. Accordingly, we hold that the convictions for criminal contempt for failure to pay alimony and child support are reversed and the sentences are vacated.

**C. Jury Trial**

We will next address whether Ahern is entitled to a jury trial for criminal contempt under Tenn. Code Ann. § 29-9-102. In Brown v. Latham, this Court

13

distinguished the contempt provisions in Tenn. Code Ann. § 29-9-102 from Tenn. Code Ann. § 36-5-104(a). Brown, 914 S.W.2d at 889. Tennessee Code Annotated § 36-5-104 addresses only the failure to pay child support. The punishment for violation of this statutory provision is the equivalent of punishment for committing a misdemeanor offense. Brown, 914 S.W.2d at 888.

Unlike Tenn. Code Ann. § 36-5-104(a), contempt provisions of Tenn. Code Ann. § 29-9-102 are used to vindicate the authority of the courts either by punishment or by forcing compliance. Brown, 914 S.W.2d at 888.[9] The "offenses" enumerated in Tenn. Code Ann. § 29-9-102 are wilful affronts to the court and include the wilful misbehavior of an individual in the court's presence, the wilful disobedience of an individual to a court order, abuse of or unlawful interference with the court proceedings, and jury tampering. Regardless of the form of the remedy or punishment, it is the court and its administration of justice that are offended by an act of contempt. As this Court said long ago in Graham v. Williamson:

> The power of courts to punish for contempt is of immemorial antiquity, and is inherent in all courts *as a necessary power belonging to them in order to enable them* to accomplish the purposes for which they were designed; that is, the orderly trial and decision of causes, the enforcement of public order, the prevention of interferences with their proceedings, and the enforcement of the due respect belonging to them as institutions of the country.

Graham, 164 S.W. 781, 782 (Tenn. 1914) (emphasis added).

> The general rule is that a constitutional guaranty of jury trial does not apply to proceedings to punish for

---

[9]State v. Dusina, 764 S.W.2d 766 (Tenn. 1989), does not apply to the facts of this case. In Dusina, this Court held that the right to a jury trial under the Tennessee constitution is well established for a violation of general criminal statutes where a fine of more than $50 or any confinement of the accused may be imposed. Id. at 768. "The right to trial by jury was not unlimited. For example, it did not include equity cases or cases involving summary punishment for contempt of court even though confinement in a jail or workhouse might be imposed as punishment." Id. We point out that this case does not involve a violation of a general criminal statute. At issue here is the violation of a court order.

> contempt of court whether in a court of law, a court of equity, a court having criminal jurisdiction, or other court. Punishment for contempt may be summary whether the contempt is direct or indirect, civil or criminal, whether the contempt consists in disobedience of an order of the court, insult, or in other conduct or omission, whether the acts constituting the contempt constitute also infractions of the criminal law, although of the grade of felony and whether imprisonment or fine is imposed or indemnity of an adverse party is decreed. Due process does not require a jury trial in such a proceeding.

Pass v. State, 184 S.W.2d 1, 3 (Tenn. 1944). The power to address violations as contempt belongs to the courts. We conclude that one charged with criminal contempt under Tenn. Code Ann. § 29-9-102 is not entitled to a jury trial.

## III. CONCLUSION

The constitutional protections against double jeopardy prohibited Ahern's retrial in Division 8 after testimony had already been taken in another proceeding in Division 5. Accordingly, the convictions for criminal contempt are reversed and the sentences vacated. We also conclude an individual charged with contempt under Tenn. Code Ann. § 29-9-102 is not entitled to a jury trial when the remedy sought is that of criminal contempt. This case is remanded to the trial court for further proceedings consistent with this opinion.

The costs of this appeal are taxed against Dorothy Jane Pierotti for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

**Concurring:**

Anderson, C.J.
Drowota, Birch, and Barker, J.J.