IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 31, 2003

## NEWELL SMITH v. BRENDA CAROL SMITH

**Appeal from the Chancery Court for Wilson County**
**No. 20047     Charles K. Smith, Chancellor**

---

**No. M2001-02231-COA-R3-CV - Filed May 29, 2003**

---

Wife filed petition for civil contempt against former Husband for failure to pay alimony as set forth in the Martial Dissolution Agreement and final decree. Husband responded, arguing that he did not have the ability to pay the alimony as agreed. The trial court found Husband in willful contempt of the previous order of the court due to his failure to pay the first two alimony installments and ordered Husband incarcerated if he did not appeal or make those payments within thirty days. Because the trial court found that Husband did not have the ability to pay at the time of the contempt hearing, we vacate the order incarcerating Husband if he does not pay.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Henry Clay Barry, Lebanon, Tennessee, for the appellant, Newell Lynn Smith.

Brenda Carol Smith, Cookeville, Tennessee, pro se.

## OPINION

On September 18, 2000, Brenda Smith[1] filed a petition for contempt against Newell Smith, her former husband, alleging that he had failed to pay alimony as ordered in their final decree of divorce and accompanying Marital Dissolution Agreement and seeking a finding of willful civil contempt. Specifically, Ms. Smith alleged that Mr. Smith failed to pay alimony in the amount of a lump sum of $5,000 within seven days of the entry of the decree and in the amount of $2,000 per month thereafter and was $19,000 in arrears. Mr. Smith admitted these allegations.

---

[1] Ms. Smith did not file a brief on appeal. This court issued a show cause to Ms. Smith and she responded that the case could be submitted to the court solely on the record and the brief of Mr. Smith.

In his answer, Mr. Smith alleged his income had been drastically reduced from the time he signed the MDA, having fallen from between $70,000 - $100,000 in 1999 to approximately $10,000 for 2000. He also alleged that Mrs. Smith's current income was three times his. He also stated that his inability to perform under the MDA was the result of Mrs. Smith's willful and malicious acts against him which resulted in his economic devastation. Mr. Smith also counter-petitioned for a reduction in alimony payments due under the Marital Dissolution Agreement.

At the time of the divorce, Mr. Smith owned his own successful private investigation firm. Mr. Smith testified that, at the time of the MDA, he had a check from a potential client in the amount of $5,000, which was a retainer fee for his services to be rendered as a private investigator. He testified that it was from the proceeds of this check he intended to pay the first alimony check of $5,000 to Ms. Smith, as he agreed in the MDA. He further testified that his services were terminated prior to his doing any work or earning the fee for which he was paid $5,000, and so he returned the check to the client.

Some time in close proximity to the divorce, Mr. Smith came under investigation for unspecified criminal charges. Mr. Smith was under the impression that the investigation of him and his present wife would conclude with the divorce and that, as a result, his business would continue to thrive.[2] However, Mr. Smith testified that the investigation continued after the divorce and ultimately culminated in his indictment. As a result of this indictment, Mr. Smith testified that his business plummeted. He was unable to find secure employment and was even dismissed from a job at the Wilson County Humane Association where he made less than $10.00 per hour. Sometime later, he began working for minimum wage. He also testified that he owns no legal or equitable interest in real estate, retirement accounts, stocks, bonds, or certificates of deposit and that he does not even own a vehicle. The trial court had a problem with Mr. Smith's credibility regarding the testimony about the automobiles, however, because although the affidavit he filed prior to the hearing indicated that he owned no automobile, he testified at the hearing that he and his present wife own a vehicle valued at less than $500.

The trial court held a hearing,[3] and issued an order which made the following findings:

Husband had the ability to make the $5,000 payment contemplated in the parties' Marital Dissolution Agreement and also had the ability to pay the first alimony installment of $2,000. He is therefore in willful civil contempt for his failure to do so; Husband no longer has the ability to make such alimony payments and his payments shall be reduced retroactive to the date of filing of his counterclaim; Petitioner may at any time request to modify such alimony, there are credibility questions as to Husband's affidavits. . . .

---

[2] He thought that the investigation would conclude because he alleged that the entire investigation was the result of Ms. Smith's allegations against him.

[3] The only evidence presented to the trial court consisted of Mr. Smith's affidavit and testimony.

Husband is in willful civil contempt of this Honorable Court's orders for his failure to make the $5,000 initial payment to Wife and the first $2,000 alimony installment to Wife which were part of the parties' Marital Dissolution Agreement.

Husband shall have thirty (30) days to file and perfect an appeal in this matter. In the alternative, Husband shall pay the sum of Seven Thousand ($7,000) on or before the thirtieth day. Timely payment of such sum will purge Husband of his willful contempt. Failure to pay the sum will result in incarceration for ten (10) days for each act of willful civil contempt for a total incarceration of twenty (20) days.

Wife shall be awarded a judgment of Twenty Nine Thousand ($29,000) Dollars for alimony arrearages, which shall not be dischargeable in bankruptcy, for which execution may issue.

Wife's attorney, Susan M. Merry, is awarded a reasonable attorney's fee of One Thousand ($1,000) Dollars for which execution may issue.

Husband's alimony obligation shall be reduced to One Dollar ($1.00) retroactive to the date of filing of Husband's counterclaim on or about October 13, 2000. . . .

Husband appeals the decision of the trial court. On appeal, there is no transcript of the trial court proceedings. However, Mr. Smith filed an affidavit prior to the hearing and has filed a statement of the evidence subsequent to the hearing in accordance with Tenn. R. App. P. 24. It is from that statement of the evidence and affidavit that we glean the facts.

On appeal, Mr. Smith challenges the finding of willful contempt for nonpayment of the two alimony payments due within the thirty days of the entry of the final decree of divorce, totaling $7,000, and the sentence to 20 days incarceration if that amount were not paid within a requisite time period. He does not appeal the judgment for arrearages or the award of attorney's fees.

The power of the court to hold citizens in contempt is essential to the protection of our justice system. Criminal contempt is a means through which individuals guilty of willfully derogating the authority of the court are punished, whereas civil contempt sanctions protect private rights. *Black v. Blount*, 938 S.W.2d 493, 398 (Tenn. 1996). Tennessee holds specific types of conduct to be punishable as contempt of court in Tenn. Code Ann. § 29-9-102, which states, in pertinent part:

The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases: . . .

(3) The willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said courts.

*See also Ahern v. Ahern*, 15 S.W.3d 73 (Tenn. 2000). In *Ahern*, our Supreme Court explained the basis for a court's exercise of its contempt powers and distinguished between the two types:

> An act of contempt is a wilful or intentional act that offends the court and its administration of justice. Tenn. Code Ann. § 29-9-102; *see Graham v. Williamson*, 128 Tenn. 720, 164 S.W. 781, 782 (1914). Traditionally, contempt has been classified as civil or criminal depending upon the action taken by the court to address the contempt. Title 29 Chapter 9 of the Tennessee Code on Remedies and Special Proceedings provides the grounds for contempt and the remedies available to the court. Tenn. Code Ann. §§ 29-9-102-104.
>
> . . . .
>
> After a finding of contempt, courts have several remedies available depending upon the facts of the case. A court can imprison an individual to compel performance of a court order. This is typically referred to as "civil contempt." This remedy is available only when the individual has the ability to comply with the order at the time of the contempt hearing. Tenn. Code Ann. § 29-9-104; *see also Garrett v. Forest Lawn Memorial Gardens*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979). Thus, with civil contempt, the one in contempt has the "keys to the jail" and can purge the contempt by complying with the court's order. Tenn. Code Ann. § 29-9-104; *Garrett*, 588 S.W.2d at 315. In civil contempt, the imprisonment is meted out for the benefit of a party litigant. *See Shiflet v. State*, 217 Tenn. 690, 693, 400 S.W.2d 542, 543 (1966).
>
> A court can also imprison and/or fine an individual simply as punishment for the contempt. This remedy is commonly referred to as "criminal contempt." Unless otherwise provided, the circuit, chancery, and appellate courts are limited to imposing a fine of $50.00 and to imprisoning an individual for not more than ten days. Tenn. Code Ann. § 29-9-103. A party who is in criminal contempt cannot be freed by eventual compliance. *See Shiflet*, 217 Tenn. at 693, 400 S.W.2d at 543.

*Ahern*, 15 S.W.3d at 78-79.

Ms. Smith petitioned only for civil contempt.[4] The trial court found Mr. Smith in civil contempt for his past failure to pay the ordered alimony. However, the court specifically found that Mr. Smith did not have the present ability to pay at the time of the contempt hearing. Consequently, Mr. Smith did not have the present ability to purge his contempt.

---

[4] An action for criminal contempt carries procedural requirements not present in the proceedings herein. Tenn. R. Crim. P. 42(b); *Storey v. Storey*, 835 S.W.2d 593 (Tenn. Ct. App. 1992). Because this was not an action for criminal contempt, Mr. Smith's past failure to pay, even if willful, was not punishable in this proceeding by incarceration for criminal contempt.

Incarceration for civil contempt is remedial and coercive in nature. It is designed to compel compliance with the court order. *Black*, 938 S.W.2d at 398; *Bryan v. Leach*, 85 S.W.3d 136, 158 (Tenn. Ct. App. 2001). Such imprisonment, however, is only available when the contemnor has the present ability to pay or to comply with the order. "If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, he may be imprisoned until he performs it." Tenn. Code Ann. § 29-9-104(a). Because the trial court found Mr. Smith was unable to pay at the time of the hearing, the finding of civil contempt and the order of imprisonment based on that finding must be vacated.

While the trial court found that Mr. Smith's failure to make the first two alimony payments was wilful and that he had the ability to make those payments at the time they were due, that finding might justify a criminal contempt holding and punishment by incarceration, this was not an action for criminal contempt, and the court did not impose incarceration as a punishment for past contempt. Incarceration until he pays is simply not an available remedy without the current ability to comply. *Gossett v. Gossett*, 34 Tenn. App. 654, 658-59, 241 S.W.2d 934, 936 (Tenn. Ct. App. 1952).

In conclusion, we vacate the trial court's finding of civil contempt ordering Mr. Smith to pay the $7,000 alimony obligation within thirty days from the trial court's order and resulting punishment of incarceration for failure to comply with such finding. The costs of the appeal are taxed to Brenda Carol Smith.

_____
PATRICIA J. COTTRELL, JUDGE