IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2010

## STATE EX REL. YVETTE MARTIN v. LAKISHA LYNCH

**Appeal from the Juvenile Court for Davidson County**
**No. 2008-2658, 9919-51081     W. Scott Rosenberg, Judge**

_____

**No. M2009-00994-COA-R3-JV - Filed August 5, 2010**

_____

The mother of a minor child appeals her conviction of eighteen counts of criminal contempt for willful failure to pay child support. She contends the evidence was insufficient to sustain the convictions for criminal contempt. We agree and reverse the finding of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Cynthia Elease Greene, Nashville, Tennessee, for the appellant, Lakisha Lynch.

Robert E. Cooper, Jr., Attorney General and Reporter, and Warren Jasper, Senior Counsel, for the appellee, State of Tennessee, ex rel. Yvette Martin.

## OPINION

On April 30, 2008, the State filed a petition for civil and criminal contempt against Lakisha Lynch (Mother) alleging that she willfully failed to pay child support for her child while in the custody of the paternal grandmother Yvette Martin. The petition, filed by the State on behalf of the paternal grandmother, stated that Mother was required by a court order, entered on July 17, 2006, to pay child support of $30 per week and that she paid no support for the child for the period from December 7, 2005 through March 4, 2008. It is undisputed that Mother did not pay child support on at least eighteen occasions.

Following the filing of the petition, Mother filed a motion to suspend the child support payments. She alleged she was under medical care and unable to work. The trial court denied the motion and ruled that the child support payments would be held in arrears until Mother was released from medical leave.

The parties appeared for a settlement hearing on October 28, 2008; no agreement was reached so the contempt petition was set for hearing on December 2, 2008. At the December 2 hearing, Mother agreed to participate in the juvenile court's problem solving program. As part of the program, Mother was ordered to appear at a January 21, 2009 status hearing with a plan of action for obtaining employment. Mother appeared at the hearing but did not have a plan of action and was ordered to appear at a second status hearing on February 18, 2009 with a plan of action. She attended the second hearing but again failed to present a plan of action; as a consequence, Mother was dismissed from the problem solving program and the contempt petition was set for hearing on April 7, 2009.

At the hearing on the petition for contempt, the State presented a Non-Custodial Parent Payment Summary[1] showing more than eighteen child support payments Mother had failed to make for the period from December 7, 2005 through March 4, 2008. The State also presented the testimony of the paternal grandmother who had custody of the child at all material times. Mother did not testify.

At the conclusion of the hearing, the trial court found Mother guilty of eighteen counts of criminal contempt. She was sentenced to serve ten days in jail for each of the eighteen counts. Mother filed a timely appeal.

**ANALYSIS**

The willful disobedience of "any lawful writ, process, order, rule, decree, or command" is punishable as criminal contempt. Tenn. Code Ann. § 29-9-102(3). A defendant accused of criminal contempt is presumed to be innocent. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006) (citing *Shiflet v. State*, 400 S.W.2d 542, 544 (Tenn. 1966)). However, once convicted of contempt, the accused loses the presumption of innocence; thus, on appeal, the issue before this court is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cottingham*, 193 S.W.3d at 538 (citing Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003) (stating the prosecution is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it); *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996)).

WILLFUL FAILURE TO PAY CHILD SUPPORT

The contemptuous offense of willfully failing to pay child support has two essential

---

[1]This is a computer printout prepared by the Department of Human Services.

but distinct elements: (1) the defendant had "the ability to pay at the time the support was due," and (2) "the failure to pay was willful." *Murray v. Neiswinter*, No. M2005-01983-COA-R3-CV, 2007 WL 565823, at *6 (citing Tenn. Code Ann. § 29-9-102; quoting *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000)). Whether the alleged contemnor had the "ability to pay" and whether the failure to pay was "willful" require distinct findings of fact, and both must be proven beyond a reasonable doubt in order to find a person in criminal contempt. *Id.* (citing *Martin v. Moats*, No. M2004-01921-COA-R3-CV, 2006 WL 2527641, at *2 (Tenn. Ct. App. Aug. 24, 2006); *McPherson v. McPherson*, No. M2003-02677-COA-R3-CV, 2005 WL 3479630, at *4 (Tenn. Ct. App. Dec. 19, 2005)).

Mother does not dispute the fact that she failed to pay child support. Her defense is she did not have the ability to pay at the time the child support payments were due; thus her failure to pay support was not willful.

Mother challenges each of the eighteen convictions of contempt on two grounds. One, she contends the evidence is insufficient to establish that she had the ability to pay child support during the time at issue or that her failure to pay was willful. Two, she contends the trial court erred by considering her acts and omissions during the time her case was assigned to the problem solving program as evidence that her failure to pay was willful. This contention is based on the fact this conduct occurred after the petition for contempt was filed; thus, it is not competent evidence as it pertains to her ability to pay support for the period of time stated in the petition for contempt.

The evidence in the record is sparse and, as Mother correctly notes, there is no direct evidence to establish that Mother had the ability to pay child support during the period of time at issue. The Non-Custodial Parent Payment Summary, a written report, reveals that Mother failed to make any child support payments during the period at issue, from December 7, 2005 through March 4, 2008; however, the summary provides no evidence, direct or circumstantial, from which to reasonably infer that Mother had the ability to pay child support when the payments were due.

The only witness who testified at the hearing was the paternal grandmother, Yvette Martin, and she provided no evidence, direct or circumstantial, to establish Mother had the ability to pay child support during the period of time at issue. Stated another way, the testimony of Ms. Martin is wholly insufficient to establish that Mother had an ability to pay or that her failure to pay child support was willful. Ms. Martin testified that Mother made no child support payments, "to her knowledge" Mother had not worked in the last three years, she did not know who was Mother's last employer, and she did not know whether Mother graduated from high school. When asked if Mother had a disability or a mental condition that would prevent her from working, Ms. Martin testified she did not know.

-3-

This court has consistently rejected convictions for contempt when there is *no* evidence in the record of the parent's ability to pay the support at the time the payment was due, *see Cottingham*, 193 S.W.3d at 539; *Sinor v. Barr*, No. M2004-02168-COA-R3-JV, 2006 WL 304699, at *5 (Tenn. Ct. App. Feb. 7, 2006), and there is no evidence in this record of Mother's ability to pay child support at the time the payments were due.

The foregoing notwithstanding, the State contends the evidence is sufficient to affirm the convictions due to the trial court's finding that Mother showed a "lackadaisical attitude towards securing employment" while her case was assigned to the problem solving program. The State relies on this court's holding in *Murray v. Neiswinter*, 2007 WL 565823, at *6, to make this argument. We, however, find *Murray* distinguishable based on the facts. Unlike the case at bar, *Murray* was appealed to this court three times and remanded to the trial court twice for further hearings. *State ex rel. Murray* v. *Neiswinter*, 2007 WL 565823 (Tenn. Ct. App. Feb. 23, 2007); *Neiswinter v. Murray*, 2003 WL 23103967 (Tenn. Ct. App. Dec. 31, 2003); *Murray v. Murray*, 2000 WL 827960 (Tenn. Ct. App. June 27, 2000). More importantly, in *Murray*, the court made reference to the parent's conduct during the period of time the support payments were due.[2] *Murray v. Neiswinter*, 2007 WL 565823, at *6 (quoting *Ahern*, 15 S.W.3d at 79). That is not the case here. Accordingly, we find *Murray* unpersuasive.

The appropriate inquiry in this case is whether Mother had the ability to make the payments "*at the time the support was due*," from December 7, 2005 through March 4, 2008. The trial court found Mother's attitude was lackadaisical during the time her case was assigned to the problem solving program. This time frame, however, is not germane to the issue of whether Mother had the ability to pay support when the payments were due. We, therefore, find the trial court erroneously considered Mother's conduct during a period of time that was not germane to the matter at issue.

There is another reason the trial court erred in considering Mother's conduct after the petition was filed. This is because the State failed to give Mother proper notice that her conduct during the pendency of these proceedings was at issue. *See* Rule 42, Tennessee Rules of Criminal Procedure. The petition for criminal contempt must "state the essential facts constituting the criminal contempt charged and describe it as such." Tenn. R. Crim. P. 42(b)(1)(C). As Mother correctly notes, the Notice in this case made no reference to

---

[2]In the first contempt trial, the trial court found the mother was able to pay child support and that she willfully failed to do so. *Neiswinter*, 2003 WL 23103967, at *5 . Then in the second remand to the trial court, the trial court made the finding that the parent was still able to pay child support because "she had also maintained the same lackadaisical attitude to secure employment which would allow her to meet her child support obligation." *Murray*, 2007 WL 565823, at *6 (citing *Neiswinter*, 2003 WL 23103967, at *5).

Mother's actions after the filing of the contempt petition. Moreover, the State did not amend the Notice to include any allegations of contemptuous actions by Mother occurring during the pendency of these proceedings.[3] Thus, Mother's post-petition conduct, including the lackadaisical attitude Mother exhibited while her case was assigned to the problem solving program, was not before the court.

Having considered the evidence in the light most favorable to the State, we are unable to conclude that any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cottingham*, 193 S.W.3d at 538 (citing Tenn. R. App. P. 13(e); *Jackson*, 443 U.S. at 319; *State v. Davidson*, 121 S.W.3d at 614; *Black*, 938 S.W.2d at 399). Accordingly, we reverse the judgment of the trial court as to all eighteen findings of contempt.

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded with costs of appeal assessed against the State of Tennessee.

_____
FRANK G. CLEMENT, JR., JUDGE

[3]We also find nothing to indicate that the trial court intended to hold Mother in contempt under Tenn. R. Crim. P. 42(a), which provides for criminal contempt committed in the judge's presence and requires the judge's certification that such conduct constituting contempt occurred in the presence of the judge.

-5-