IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 20, 2010

**IN THE MATTER OF JAYDEN L. L.**

**Appeal from the Juvenile Court for Davidson County**
**No. AC 97367      W. Scott Rosenberg, Magistrate**

---

**No. M2009-02453-COA-R3-JV - Filed December 7, 2010**

---

The father of a minor child appeals his conviction of eighteen counts of criminal contempt for willful failure to pay child support. He contends the evidence was insufficient to sustain the convictions because the State failed to present evidence he had the ability to pay or that his failure to pay was willful. We agree and reverse the holding of the trial court.

**Tenn. R. App. P. 3; Judgment of the Juvenile Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Shannon R. Romain, Nashville, Tennessee, for the appellant, Marce Lundsford, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Warren A. Jasper, Senior counsel, for the appellee, State of Tennessee.

**OPINION**

A petition to establish paternity and set child support was filed in the Davidson County Juvenile Court against Marce Lundsford, Jr. on January 2, 2003. Following a hearing on February 2, 2003, the court determined that Mr. Lunsford ("Father") was the father of the child and ordered him to pay $290.33 per month to Tina Corley ("Mother"), the mother and primary custodial parent of the child. This included $247.00 based on Father's average monthly income of $1,386.66, as well as $43.33 for retroactive support, of which Father owed a total of $1,729.00.

The first petition for contempt against Father was filed on August 24, 2004 in which it was alleged that Father was guilty of eighteen counts of criminal contempt for failure to make his child support obligations and that his payments were in arrears in the amount of

$5,573.00. By plea agreement, on August 23, 2005, Father agreed to begin making bi-weekly payments of $114.00, and his 180-day jail sentence was suspended, so long as he began to comply with the support order. The case was set for compliance review on October 18, 2005.

Following the October hearing, Father, still not in compliance, was required to begin to make weekly payments of $67.00. Father then began complying and his sentence was deemed to have been completely served on January 10, 2006. He continued to pay regularly until October 2007. He then made three payments early in 2008, but stopped completely in March 2008, with the exception of one payment in May 2008.

The State filed a second petition against Father on October 13, 2008, alleging eighteen counts of criminal contempt for failure to pay court-ordered child support between March and October 2008. It is this petition that is the subject of this appeal.

As a diversion to the charges, Father agreed to participate in the Problem Solving Court, a program designed to assist people in complying with child support orders. Upon successful completion of the program, Father would be eligible to have the contempt charges dismissed. While his case was assigned to the Problem Solving Court, Father applied for dozens of jobs, but struggled to find regular employment, due at least in part to his criminal record and lack of high school degree or GED. Support payments were erratic during this time. However, during a status hearing on June 17, 2009, Father reported that he had obtained steady employment and would begin making regular child support payments. The case was set on the settlement docket on August 11, 2009. Father, however, was dismissed from this job after three weeks, and continued to fail to pay.
Thereafter, Father was found not in compliance during the August hearing before the Problem Solving Court, and the petition for contempt was set for trial.

The contempt hearing was held on October 13, 2009. For its case-in-chief, the State presented the Department of Human Services Non-Custodial Parent Payment Summary, which showed that Father failed to make more than eighteen child support payments between March 13, 2008 and October 6, 2008. The State also presented the testimony of Mother, who had custody of the child at all material times; her testimony confirmed the fact that Father had failed to make support payments during this time frame. Father testified on his own behalf, but his testimony only pertained to his efforts to comply with the requirements of the Problem Solving Court, which occurred after the contempt petition was filed.

At the conclusion of the hearing, the trial court found Father guilty of eighteen counts of criminal contempt. He was sentenced to serve ten days in jail for each of the eighteen counts. Father filed a timely appeal.

**ANALYSIS**

The willful disobedience of "any lawful writ, process, order, rule, decree, or command" is punishable as criminal contempt. Tenn. Code Ann. § 29-9-102(3). A defendant accused of criminal contempt is presumed to be innocent. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006) (citing *Shiflet v. State*, 400 S.W.2d 542, 544 (Tenn. 1966)). However, once convicted of contempt, the accused loses the presumption of innocence; thus, on appeal, the issue before this court is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cottingham*, 193 S.W.3d at 538 (citing Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003) (stating the prosecution is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it); *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996)).

The contemptuous offense of willfully failing to pay child support has two essential but distinct elements: (1) the defendant had "the ability to pay at the time the support was due," and (2) "the failure to pay was willful." *State ex rel. Murray v. Neiswinter*, No. M2005-01983-COA-R3-CV, 2007 WL 565823, at *6 (Tenn. Ct. App. Feb. 23, 2007) (citing Tenn. Code Ann. § 29-9-102; quoting *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000)). Whether the alleged contemnor had the "ability to pay" and whether the failure to pay was "willful" require distinct findings of fact, and both must be proven beyond a reasonable doubt in order to find a person in criminal contempt. *Id.* (citing *Martin v. Moats*, No. M2004-01921-COA-R3-CV, 2006 WL 2527641, at *2 (Tenn. Ct. App. Aug. 24, 2006); *McPherson v. McPherson*, No. M2003-02677-COA-R3-CV, 2005 WL 3479630, at *4 (Tenn. Ct. App. Dec. 19, 2005)).

Father does not dispute the fact that he failed to pay child support from March to October of 2008. Instead, he argues that he did not have the ability to pay at the time the payments were due; thus, his failure to pay support was not willful. Father challenges the convictions for contempt on two grounds.

First, he argues the trial court erred by considering his actions during the time his case was assigned to the Problem Solving Court in concluding that his failure to pay was willful. This contention is based on the fact that his participation in that program occurred after the contempt petition was filed; thus, it has no bearing on his ability to pay during the period of time stated in the petition. Second, he argues that the evidence of his conduct during the contempt period is insufficient to establish that his failure to pay was willful or that he had the ability to pay.

The law is clear that the appropriate inquiry in cases involving criminal contempt for failure to pay child support is whether the defendant had the ability to pay "*at the time the support was due*." *Ahern*, 15 S.W.3d at 79 (emphasis added); *see also State ex rel. Martin v. Lynch*, No. M2009-00994-COA-R3-JV, 2010 WL 3064365, at *3 (Tenn. Ct. App. Aug. 5, 2010); *Murray*, 2007 WL 565823, at *6. In this case, the time period alleged in the petition was from March 13, 2008 to October 6, 2008. The trial court, however, stated that it considered Father's behavior while enrolled in the Problem Solving Court to be "part of this contempt," and that the court would not "parse out" the time before the petition was filed from the time after the petition was filed.

The State argues that Father's "irresponsible" behavior and "dismal" effort in finding a job while in the Problem Solving Court raise the inference that he had the ability to obtain employment and pay support; thus, it was properly considered by the trial court. The State relies on this court's holding in *Murray v. Neiswinter*, 2007 WL 565823, at *6, to make this argument. We, however, find *Murray* distinguishable. In *Murray*, this court did reference the defendant's "lackadaisical attitude" toward securing employment to support a finding that she had the ability to pay and that her failure to support was willful; however, in *Murray*, there was substantial and material proof of the defendant's behavior "during the pivotal time period, April through August 2004," when the contempt offenses were alleged to have taken place. *Id.* at *7-8. For example, there was proof in *Murray* that the defendant was employed for "at least a great portion of that time," as well as proof of how much money she made, her other spending habits, and that she lacked an explanation of her failure to pay. *Id.* at *6. By contrast, in the case at bar, there is no proof at all of Father's income or spending habits "during the pivotal time period," March 13 to October 6, 2008. *See id.* at *7.

We also find the State's reliance on Father's behavior and efforts while his case was assigned to the Problem Solving Court misplaced because a petition for contempt must "state the essential facts constituting the criminal contempt charged and describe it as such," Tenn. R. Crim. P. 42(b)(1)(C), and the petition at issue on appeal makes no reference to Father's behavior or efforts while the case was assigned to the Problem Solving Court.[1] Father's contempt cannot be based on "facts constituting the criminal contempt" that are not properly charged and described in the petition for contempt, *see id.*; therefore, Father's convictions cannot be based upon his post-petition conduct.[2]

---

[1] The contempt petition was filed on October 6, 2008, and the State did not amend the petition to include allegations of contemptuous actions by Father during the pendency of this action. Thus, the petition made no reference to Father's actions after the filing of the petition.

[2] We also find nothing to indicate that the trial court intended to hold Father in contempt under Tenn. R. Crim. P. 42(a), which provides for criminal contempt committed in the judge's presence and requires the
(continued...)

The only evidence the State presented at trial of Father's actions during the time period in the petition was the Non-Custodial Parent Payment Summary and Mother's testimony. The Payment Summary reveals and it is undisputed that, with the exception of one payment in May 2008, Father failed to make any payments between March 13 and October 6, 2008. However, the report provides no evidence, direct or circumstantial, from which to reasonably infer that Father had the ability to pay child support when the payments were due, or that his failure to pay was willful. Mother's testimony is similarly lacking. The only proof she offered regarding Father's ability to pay was that, in a conversation she had with him in March 2008, Father stated he could not visit with the child because he had to work; however, Mother admitted this conversation may have taken place prior to the time when Father stopped making support payments. Moreover, Mother testified that she did not know if he was actually working at the relevant times, she did not produce any proof of Father's employment or financial state in 2008, and she admitted that she didn't "know anything about him;" she only knows "when we get a payment and when we don't."

This court has consistently rejected convictions for contempt when the record lacks evidence of the parent's ability to pay the support *at the time the payment was due. See Cottingham*, 193 S.W.3d at 539; *Sinor v. Barr*, No. M2004-02168-COA-R3-JV, 2006 WL 304699, at *5 (Tenn. Ct. App. Feb. 7, 2006). Such is the case here.

Having considered the evidence in the light most favorable to the State, we are unable to conclude that a trier of fact could find the essential elements of contempt for the period at issue beyond a reasonable doubt.[3] *Cottinger*, 193 S.W.3d at 538 (citing Tenn. R. App. P. 13(e); *Jackson*, 443 U.S. at 319; *Davidson*, 121 S.W.3d at 614; *Black*, 938 S.W.3d at 399). Accordingly, we reverse the judgment of the trial court as to all eighteen findings of contempt.

---

[2](...continued)
judge's certification that such conduct constituting contempt occurred in the presence of the judge.

[3]We acknowledge the frustration the trial courts have with parents who repeatedly fail to support their children when it appears to the trial court the parent is irresponsible and the parent's efforts to find and maintain employment are dismal. Nevertheless, in this case the State and the child's mother failed to introduce evidence of Father's ability to pay at the time the support at issue was due.

## CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded with costs of appeal assessed against the State of Tennessee.

_____
FRANK G. CLEMENT, JR., JUDGE