IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

August 12, 2004 Session

**SUSAN LOUISE MOOR WEISSFELD v. STEVEN CURTIS WEISSFELD**

**Appeal from the Circuit Court for Knox County**

**No. 80536      Bill Swann, Judge**

**Filed September 16, 2004**

---

**No. E2004-00134-COA-R3-CV**

---

This appeal arises from a post-divorce case in which the trial court found the Appellant to be in both criminal and civil contempt for her failure to comply with the court's order respecting co-parenting time and division of property. The Appellant contends that the trial court erred in its finding of criminal contempt because she was not provided adequate notice under Tenn. R. Crim. P. 42(b). The Appellant also contends that the trial court erred in its award of attorney's fees to opposing counsel. We reverse the trial court's order to the extent that it decrees the Appellant to be in criminal contempt and we modify the trial court's order which awards attorney's fees to opposing counsel.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part and Judgment Modified; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and D. MICHAEL SWINEY, J., joined.

Kevin W. Shepherd, Maryville, Tennessee, for the Appellant, Susan Louise Moor Weissfeld

Gregory H. Harrison, Knoxville, Tennessee, for the Appellee, Steven Curtis Weissfeld

**OPINION**

**I.**

The Appellant, Susan Louise Moor Weissfeld, and the Appellee, Steven Curtis Weissfeld, were divorced by order of the Knox County Circuit Court entered December 13, 1999, *nunc pro tunc* to November 19, 1999. After their divorce, disputes arose between the parties regarding various matters such as the payment of child support, the payment of marital debt and rights of visitation. On September 13, 2002, the parties announced in open court that they had reached an agreement as

to all controverted issues and an agreed order setting forth the terms of their agreement was entered on January 3, 2003, *nunc pro tunc* to September 13, 2002. The agreed order incorporates a permanent parenting plan which states, in pertinent part, as follows:

## I.. RESIDENTIAL SHARING SCHEDULE

### A. DAY TO DAY SCHEDULE

The parties shall share joint custody of the minor child, [E.L.W.], (DOB 02/16/87), with the Mother having primary residential custody during the school year ..., and the Father shall have primary residential custody during the summer ... .

### F. TRANSPORTATION ARRANGEMENTS

The Father shall provide transportation for all of his co-parenting time with the child, except that the Mother shall provide transportation of the child at either the beginning or the end of the Father's summer co-parenting time.
Whenever transportation for the child is provided by airline, the child will fly to or from St. Louis, Missouri.

### G. OTHER

In no event shall either party withhold the child from the other parent for any visitation enumerated herein. Furthermore, the co-parenting time designated herein to the non-custodial parent, shall not be at the discretion of the custodial parent. Furthermore, the co-parenting time shall not be at the child's discretion, except that for any of the ten weekend or extended weekend co-parenting times [previously enumerated] that the Father intends to exercise out of state, the Father and child shall discuss which weekend is best considering the child's activities at the time.

The agreed order further provides that "within ten (10) days of this agreement, the Mother [shall] give to the Father, one half of all family photographs and videotapes."

At or around the same time the parties entered into the above agreement, Mr. Weissfeld re-located to Rolla, Missouri to obtain new employment.

On July 22, 2003, Mr. Weissfeld filed a petition for contempt and for modification against Ms. Weissfeld which references the agreed order and parenting plan cited above and alleges, *inter alia*, the following:

4. The Father arranged for the child to be enrolled in summer school in Missouri due to her poor grades the prior semester, had arranged and paid in advance for airline transportation and shuttle for the minor child. When the Father arrived at the airport in St. Louis, Missouri at the appointed time on or

about the 1ˢᵗ day of June, 2003, the child was not on the flight. The Father searched frantically for the child at the St. Louis airport only to learn later after a telephone conversation with the Mother and the child, that the child had decided not to come to Missouri.

5. In direct defiance of the September 13, 2003, order, the Mother unilaterally decided that the minor child would not be required to travel to Missouri for the summer with her Father. The Mother's actions constitute a blatant violation of sections I (A) and I (F), of the Permanent Parenting Plan, and cost the Father not only the summer with the daughter, but also considerable financial loss.

6. Furthermore, paragraph 5 of the Agreed Order of September 13, 2003, required the Mother to give the Father one half of all family photographs and videotapes within Ten (10) days of the agreement. The Mother has failed and refused to give the Father said family photographs and videotapes, and to this date persisted in her failure and refusal, constituting willful contempt of the Order fo the Court.

The petition requests that, upon hearing, the court find Ms. Weissfeld in contempt "and that she be punished as the court deems appropriate, including but not limited to incarceration, and full restitution." The petition further requests that Mr. Weissfeld "be awarded his reasonable attorney fees incurred in bringing this cause."

A hearing on the contempt petition was conducted on November 21, 2003. The trial court found Ms. Weissfeld to be in civil contempt for her failure to turn over one-half of the family photographs and videotapes and in criminal contempt for denying Mr. Weissfeld co-parenting time. The trial court ordered that Ms. Weissfeld be immediately incarcerated for ten days upon these findings. The trial court indicated that Ms. Weissfeld's incarceration upon the finding of civil contempt would end once she complied with the court's order requiring that she provide Mr. Weissfeld with the photographs and videotapes, but that there was nothing she could do as to the ten day sentence imposed for criminal contempt "except serve the time for having willfully disobeyed the court orders." The trial court refused to set a bond on the criminal contempt matter, indicating that the posting of a bond in that matter was moot until the civil contempt was cured. An order setting forth the court's rulings and incorporating its memorandum opinion was entered on December 2, 2003. The order also decreed that Ms. Weissfeld would be responsible for attorney's fees incurred by Mr. Weissfeld in the prosecution of the case. By subsequent order of December 17, 2003, attorney's fees were awarded to Mr. Weissfeld's attorney in the amount of $5,250.00. Thereafter, Ms. Weissfeld appealed the trial court's order finding her in contempt and its order assessing attorney's fees.

## II.

We address the following two issues in this appeal:

1. Was Ms. Weissfeld accorded adequate notice under Tenn. R. Crim. P. 42(b) with regards to the charges of criminal contempt?

2. Should the trial court's order awarding Mr. Weissfeld attorney's fees for prosecution of the contempt action be modified?

## III.

This is a non-jury case and, accordingly, our review is *de novo* upon the record of the trial court without any presumption of correctness attaching to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996) and Tenn. R. App. P. 13(d). We must, however, presume the trial court's factual findings to be correct absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## IV.

The trial court determined that Ms. Weissfeld was guilty of civil contempt for refusing to deliver family photographs and videotapes and of criminal contempt for denying Mr. Weissfeld co-parenting time. For denial of co-parenting time, Ms. Weissfeld was ordered to be incarcerated for ten days. This constituted criminal contempt since punishment was for a finite period without the possibility of release upon compliance with the order.

The criminal contempt alleged in this case is an indirect criminal contempt under Tennessee law in that it is described as having been committed outside of the court's presence. *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978). This Court has previously held that "trial courts may impose punishment for indirect criminal contempt *only after providing notice pursuant to Tenn. R. Crim. P. 42 (b)"*, citing *Jones v. Jones*, 01A01-9607-CV-00346, 1997 Tenn. App. LEXIS 132, at *8 (Tenn. Ct. App. February 26, 1997), *no appl. perm. app.(*emphasis added*).

Tenn. R. Crim. P. 42(b) provides in pertinent part as follows with respect to the notice required for prosecution of indirect criminal contempt:

> The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and *describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant* or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. *The defendant is entitled to admission to bail as provided in these rules. (*Emphasis added)

Ms. Weissfeld contends on appeal that notice pursuant to Tenn. R. Crim. P. 42(b) was inadequate. We agree that notice was inadequate and the conviction of Ms. Weissfeld for criminal contempt must be reversed for this reason.

In *Ahern v. Ahern*, 15 S.W.3d 73 at 78,79 (Tenn. 2000) the Supreme Court of this state noted the distinction between civil and criminal as follows:

> Traditionally, contempt has been classified as civil or criminal depending upon the action taken by the court to address the contempt.
> ...
> After a finding of contempt a court can imprison an individual to compel performance of a court order. This is typically referred to as "civil contempt." This remedy is available only when the individual has the ability to comply with the order at the time of the contempt hearing. Thus, with civil contempt, the one in contempt has the "keys to the jail" and can purge the contempt by complying with the court's order. In civil contempt, the imprisonment is meted out for the benefit of a party litigant.
>
> A court can also imprison and/or fine an individual simply as punishment for the contempt. This remedy is commonly referred to as "criminal contempt." Unless otherwise provided, the circuit, chancery, and appellant courts are limited to imposing a fine of $50.00 and to imprisoning an individual for not more than ten days. A party who is in criminal contempt cannot be freed by eventual compliance. (Citations omitted.)

Significantly, an individual charged with criminal contempt is entitled to many of the constitutional protections afforded any other criminal defendant, as we recently acknowledged in *Moody v. Hutchison*, No. E2003-01325-COA-R3-CV, 2004 Tenn. App. LEXIS 331, (Tenn. Ct. App. May 25, 2004), *appl. perm appeal filed Aug. 13, 2004*, at *11. As we further specified in *Storey v. Storey*, 835 S.W. 2d 593, 599 (Tenn. Ct. App. 1992), included among these protections are the presumption of innocence, the right to require that guilt be proven beyond a reasonable doubt, the right not to incriminate one's self and the right to notice.

Tenn. Crim P. 42(b) includes the requirement that the notice "state the essential facts constituting the criminal contempt charged and *describe* it as such." (Emphasis added.) See also, *Storey v. Storey*, 835 S.W.2d 593, 600 (Tenn. Ct. App. 1992).

In *Jones v. Jones*, at **8, 9 we noted as follows:

> The Tenn. R. Crim. P. 42(b) notice must *specifically* charge a party with criminal contempt and must succinctly state the facts giving rise to the charge. Because the same conduct can constitute both civil and criminal contempt, the (*Tenn. R. Crim.*

*P*. 42(b) notice eliminates any possible confusion concerning the nature of the proceeding). (Emphasis added).

We find nothing in the record which shows that Ms. Weissfeld was specifically notified that the charges against her were charges of criminal contempt. The petition does not provide this information, nor did the trial court advise her that she was being tried for criminal contempt. It is true that the petition for contempt requested incarceration and the trial court did warn the parties that there would be incarceration upon proof of contempt. However, this does not cure the lack of notice to Ms. Weissfeld, since as noted by the Court in *Ahern,* above, and, as is apparent from the sentences imposed by the Court in this case, incarceration is compatible with both civil and criminal contempt. Accordingly, mere knowledge that incarceration is a potential consequence upon a finding of contempt will not suffice to eliminate ambiguity as to the nature of the charge. The notice deficiency in this case could have been eliminated had the petition for contempt specifically stated that it was a petition for criminal contempt and contained a detailed description of the offense charged. In addition, the trial court should have advised the defendant at the outset of the hearing that she was being tried for criminal contempt.

In addition to the inadequacy of the notice provided in this case, it is our determination that the trial court erred in trying the civil and criminal contempt together. In *Cooner v. Cooner,* 01-A-01-9701-CV-00021, 1997 Tenn. App. LEXIS 690 (Tenn. Ct. App. October 10, 1997), *no appl. perm. app.,* at \*16 we noted that, "[c]ivil and criminal proceedings should not be tried simultaneously because of the significant differences in the respective burdens of proof and procedural rights accorded to the person accused of contempt." Trial court procedure is "fundamentally flawed" when the notice requirements of Rule 42(b) have not been met and when civil and criminal contempt actions are tried simultaneously. *Cooner,* at page \*7.

We further observe that the trial court declined to set bail for Ms. Weissfeld upon her conviction in this case. At the conclusion of the hearing on November 21, 2003, the following exchange took place between counsel for Ms. Weissfeld and the trial court:

> MR. SHEPHERD: Your Honor, may I ask for the court to post an appeal bond for Ms. Weissfeld?
>
> THE COURT: No.
>
> MR. SHEPHERD: The court is not posting a bond on a criminal contempt?
>
> THE COURT: We have two kinds of incarceration here. We have civil and criminal. You're ahead of yourself, sir. Anything further?
> ...
>
> MR. SHEPHERD: Your honor, as on the contempt issue, does the court not post a bond on a criminal contempt?
>
> THE COURT: We'll deal with that some other time, not now. In other words, when you have - - it's moot until you've cured your civil contempt.

MR. SHEPHERD: I believe we're still entitled by law to have a contempt bond.

THE COURT: We can deal with that when it, in fact, would be operative and helpful for you.

Tenn. R. Crim. P. 42(b) provides that the defendant in a criminal contempt case is "entitled to admission to bail as provided by these rules." Tenn. R. Crim P.32(d) further provides that "[t]he setting of bail or release upon recognizance is *a matter of right* for one convicted of a misdemeanor, pending the exhaustion of all direct procedure in the case." (Emphasis added.) As noted by the Court in *Ahern* and as provided in Tenn. Code Ann. § 29-9-103, the punishment for criminal contempt is limited to the imposition of a fine of $50.00 and imprisonment for not more than ten days and, therefore, a criminal contempt conforms to the definition of misdemeanor under Tenn. Code Ann. § 39-11-110 which provides that a misdemeanor is a violation of the law "punishable by fine or confinement for less than one (1) year, or both... ." Although we are aware that Ms. Weissfeld did not raise the trial court's failure to set bail as an issue in this appeal, we are compelled to raise this issue in our discretion under authority of Tenn. R. App. P. 13(b).

It is our determination that the cited rules mandate that there be a timely setting of bail upon a criminal contempt conviction and the trial court's failure to do so in this case constituted further procedural error.

## V.

Because a portion of the attorney's fees which Ms. Weissfeld was ordered to pay in this matter derive from the prosecution of the criminal contempt action and the Court's finding of criminal contempt is reversed, we find it appropriate to institute an adjustment of such fees. As previously noted, attorney's fees attributed to the prosecution of the contempt action and assessed against Ms. Weissfeld amounted to a total of $5,250.00. Mr. Weissfeld's attorney filed an affidavit of attorney's fees which presents a breakdown of time and cost incurred in the prosecution of this action. Our review of the record, particularly the transcript of the hearing on November 21, 2003, compels us to conclude that a substantial majority of the time expended by Mr. Weissfeld's attorney was spent on that portion of the action which the trial court determined to be criminal contempt, rather than on that portion of the action which resulted in a finding of civil contempt. In light of our reversal of the trial court's finding of criminal contempt, the Court's award of attorney's fees to Mr. Weissfeld's attorney in this case is reduced from $5,250.00 to $1,000.00.

For the foregoing reasons the judgment of the trial court of December 2, 2003, is reversed in part and the trial court's order of December 17, 2003, is modified. The cause is remanded for collection of costs below. Costs on appeal are assessed to Steven Curtis Weissfeld, for which execution may issue, if necessary.

_____
**SHARON G. LEE, JUDGE**