# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

## STATE OF TENNESSEE v. LETALVIS COBBINS, LEMARICUS DAVIDSON, and GEORGE THOMAS

**Criminal Court for Knox County**
**Nos. 86216A, 86216B, & 86216C**

**No. E2012-00448-CCA-R10-DD**



**F I L E D**

APR 1 3 2012

Clerk of the Court
Rec'd by

## ORDER

The State of Tennessee, through the Office of the Attorney General, has filed an application for an extraordinary appeal, see Tenn. R. App. P. 10, seeking review of the trial court's order granting the Defendants new trials on grounds that: (1) former Judge Richard Baumgartner, who presided over each of the Defendants' trials, committed "numerous egregious actions" in violation of both the criminal law and the Code of Judicial Conduct while presiding over the cases resulting in structural error that denied these Defendants their rights to fair trials; and (2) former Judge Baumgartner did not discharge his duty as the thirteenth juror in these cases before leaving the bench and the successor judge on these cases "is unable to serve as thirteenth juror" given "the numerous issues concerning the credibility of both certain testifying witnesses and the trial judge."

In our review of this matter, we first will set out the chronology. The Defendants were found guilty by three separate juries of the first degree murders of Channon Christian and Christopher Newsom as well as various other non-capital offenses arising out of the same criminal episode that resulted in the murders, including, but not limited to, especially aggravated kidnapping, aggravated rape, and especially aggravated robbery.

The Defendants were tried separately on the following dates:

Defendant Cobbins:     August 17 through August 26, 2009
Defendant Davidson:    October 19 through October 30, 2009
Defendant Thomas:      December 1 through December 10, 2009

Defendant Lemaricus Davidson was sentenced to death by his jury for the murders of both Christian and Newsom. Defendant George Thomas was sentenced to life without the possibility of parole for the murders of both Christian and Newsom by his jury. Defendant Letalvis Cobbins was sentenced by his jury to life without the possibility of parole for the

murder of Christian. Defendant Vanessa Coleman, who is not a party to this motion, received an effective sentence of fifty-three years for facilitation of the first degree murder of Christian, as well as for her other convictions. Her trial was held from May 3 through May 10, 2010.

At the sentencing hearings on the Defendants' non-capital convictions, former Judge Baumgartner commented at length on his view of the evidence presented during each of the trials in the course of his discussion of the appropriateness of applying certain statutory aggravating and mitigating circumstances to the non-capital sentencing decisions. Subsequently, on March 10, 2011, he pled guilty to one count of official misconduct and resigned from the bench that same day. At that point, the Defendants' motions for new trial had not yet been heard. Subsequently, Senior Judge Jon Kerry Blackwood was designated by the supreme court to hear the Defendants' motions for new trial and perform all other duties required of a trial judge on these cases.

On June 9, 2011, a hearing was held on the motion for new trial filed by counsel for Defendant Cobbins. At that hearing, Senior Judge Blackwood stated that he believed he could "proceed with the motion for a new trial."

Senior Judge Blackwood then proceeded to discuss, based upon his review of the record in this case, the extent he believed that witness credibility had been a factor. He then concluded that while witness credibility "play[ed] a part in every criminal trial," there was "ample other physical evidence in the record" and "ample other testimony in the record" such that he could discharge his responsibility as thirteenth juror in the case. Senior Judge Blackwood then announced that he "accept[ed] and approve[d] the verdict of the jury as the 13th juror." However, he announced that he would not enter an order denying Defendant Cobbins' motion for new trial until defense counsel in that case and the other cases had an opportunity to amend their motions for new trial and present argument at a hearing on the structural error issue that had been raised by counsel for Defendant Cobbins in an amendment to his motion for new trial filed on the morning of the June 9, 2011 hearing.

Counsel for the Defendants subsequently filed amended motions for new trials, asserting both the structural error and thirteenth juror arguments. At the conclusion of the hearing on the amended motions, Senior Judge Blackwood granted all four Defendants new trials based both upon his structural error finding and his conclusion that he could not act as thirteenth juror in this case. In his findings of facts and conclusions of law, entered following the hearing, Senior Judge Blackwood concluded that former Judge Baumgartner had not acted as thirteenth juror as to the trials and that they "were beset by significant credibility concerns regarding both certain witnesses and the trial judge." The order stated that while the court "had previously determined that it was able to serve as thirteenth juror

in Mr. Cobbins' case, . . . any order denying Mr. Cobbins' motion for new trial relative to the thirteenth juror issue [was] hereby withdrawn."

Defendant Coleman is not a party to this motion. The State did not seek to appeal the granting of a new trial as to Coleman. In its Rule 10 application, the State asserts that "[b]ecause the thirteenth-juror rule was already satisfied prior to [Senior] Judge Blackwood's designation to hear these cases, Judge Blackwood exceeded his authority to vacate the juries' verdicts under the thirteenth-juror rule." Finally, citing to State v. McKim, 215 S.W.3d 781, 792 (Tenn. 2007), the State argues that without an extraordinary appeal in these cases, it will "lose a right or interest that may never be recaptured," because if the Defendants are retried, the challenge by the State to the order granting the new trials will have become moot. We will consider these claims.

Initially, we note that our decision in this order pertaining to the State's Rule 10 application can neither affirm nor reverse the trial court's grounds for granting new trials. Furthermore, if the State's application to appeal were granted, only two possible results could occur in each case following briefing and oral arguments. Either the trial judge's order granting a new trial would be affirmed on at least one of the grounds (affirmance of the order would not require agreement with the trial court on *both* grounds) and new trials for each Defendant would be held, probably many months after they are currently scheduled; *or*, this court would reverse the trial court's order granting new trials, and then the trial court would have to rule on the remaining grounds for new trial asserted by Defendants Cobbins, Davidson, and Thomas. The results of the hearings on the remaining grounds for new trial could result in the trial court again granting a new trial to one or more of the three named Defendants, or if all the motions for new trial were denied, then the Defendants would be entitled to appeal their convictions and sentences a second round of appeals. Meanwhile Defendant Coleman's new trial would have been held, and, if she is convicted again, her appeal from those convictions could be well on the way toward final disposition. We mention this scenario not to state what we feel should or would occur, but only to point out some of the considerations made when contemplating judicial efficiency. We next will review the circumstances under which the State's Rule 10 application may be granted.

First, we note the court rules which are applicable to our consideration.

Rule 33(d) of the Tennessee Rules of Criminal Procedure provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." In State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995), the supreme court interpreted this rule as "impos[ing] upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case," explaining that "approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to imposition of a valid judgment." Id. When the same judge who presided over the trial overrules a defense motion

for a new trial without comment, "an appellate court may presume that the trial judge has served as the thirteenth juror and approve the jury's verdict." Id. Such statements by the trial judge must be "clear and unequivocal." State v. Moats, 906 S.W.2d 431, 435 (Tenn. 1995).

Rule 25(b)(1) of the Rules of Criminal Procedure states: "After a verdict of guilty, any judge regularly presiding in or who is assigned to a court may complete the court's duties if the judge before whom the trial began cannot proceed because of absence, death, sickness, or other disability." Rule 25(b)(2) provides that "[t]he successor judge may grant a new trial when that judge concludes that he or she cannot perform those duties because of the failure to preside at the trial or for any other reason." This court has held that a successor judge's consideration, pursuant to Rule 25(b), of whether the duties of the original judge with regard to a motion for new trial can be met in a particular case "must include an assessment of his or her ability to act as a thirteenth juror, including witness credibility." State v. Nail, 963 S.W.2d 761, 765 (Tenn. Crim. App. 1997); see also State v. Biggs, 218 S.W.3d 643, 653-54 (Tenn. Crim. App. 2006); State v. Brown, 53 S.W.3d 264, 275 (Tenn. Crim. App. 2000). This assessment in turn requires the successor judge to determine "the extent to which witness credibility was a factor in the case and the extent to which he [or she] had sufficient knowledge or records before him [or her] in order to decide whether the credible evidence, as viewed by the judge, adequately supported the verdict." Nail, 963 S.W.2d at 766; see also Biggs, 218 S.W.3d at 654; Brown, 53 S.W.3d at 275. If these determinations cannot be made by the successor judge, then the verdict cannot be approved and a new trial must be granted. See Biggs, 218 S.W.3d at 654; Brown, 53 S.W.3d at 275; Nail, 963 S.W.2d at 766.

This court has held that the State may attempt to appeal, when the trial court grants a new trial to a convicted defendant, by utilizing Tennessee Rule of Appellate Procedure 10. State v. Perry, 740 S.W.2d 723, 724 (Tenn. Crim. App. 1987). However, it is obvious that the situation must comport with the requirements of Rule 10. As per its specific provisions, that rule is applicable only in two situations:

1. If the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or

2. If necessary for complete determination of the action on appeal as otherwise provided in these rules.

Tenn. R. App. P. 10(a).

As to the first situation, our supreme court in State v. Willoughby, 594 S.W.2d 388 (Tenn. 1980), listed six conditions that would make a Rule 10 extraordinary appeal appropriate. These conditions, along with our conclusion as to their applicability to the Rule 10 application before us, are set forth as follows:

**1 & 2. Where the *ruling* of the court below represents a fundamental illegality or where the *action* of the trial judge was without legal authority.**

We conclude that the trial court's granting of the motions for new trial on the basis of (a) inability to act as thirteenth juror as the successor judge and (b) fundamental structural error cannot be said to be a fundamental illegality or be without legal authority. In other words, the trial judge has the authority and legal ability to grant a new trial on either ground.

**3 & 4. Where the ruling constitutes a failure to proceed according to the essential requirements of the law *or* where the action of the trial judge constituted a *plain and palpable* abuse of discretion.**

Likewise, we cannot conclude that the trial court acted with a "plain and palpable" abuse of its discretion. The record itself bears out this conclusion. Further, the record in this Rule 10 application does not reflect that the trial court failed to "proceed according to the essential requirements of the law." The State was allowed to be heard on all arguments raised by the Defendants. We do note that, in the motion for new trial hearing, the State never argued that former Judge Baumgartner satisfied the requirement to act as thirteenth juror during the sentencing hearings of the Defendants, a principal argument before this Court in its Rule 10 application. While we decline to conclude that this specific argument is waived because of a failure to present it at the appropriate time in the trial court, it is significant in consideration of whether these two conditions, *and* the final two conditions listed below, apply in this case.

**5 & 6. Where the ruling is tantamount to the denial of either party of a day in court *or* where either party has lost a right or interest that may never be recaptured.**

As stated previously, the State was allowed to fully present any arguments it wished to provide at the hearing on the motion for new trial. The ruling by the trial court does not bar the State from prosecuting any of the three Defendants for the cases which are the subject of the Rule 10 application.

Arguably the only "right or interest" lost by the State is the "right" to have an appellate court affirm all of the convictions and sentences. However, as previously stated, even if this Rule 10 application is granted, this Court would not be reviewing all of the issues regarding the convictions and sentences. The result of an extraordinary appeal could only be either (1) new trials as currently ordered, or (2) further appeals by the Defendants on the remaining issues (or possibly *another* application by the State to appeal if the trial court

granted any of the Defendants a new trial on another ground).

As to the second situation when Rule 10(a) is applicable, the Advisory Commission Comments to Rule 10 state in part, "The circumstances in which review is available under [Rule 10], however, are very **narrowly circumscribed** to those situations. . . as may be necessary to permit complete appellate review **on a later appeal**." (emphasis added) We interpret the rule, in light of these comments, to mean that a Rule 10 appeal is applicable under 10(a)(2) when a legal issue arises while criminal proceedings are pending prior to a judgment being entered, when there is the possibility of a later direct appeal. Therefore it would not apply to the situation, as exists here, where the trials were completed, judgments were entered, but new trials were ordered post verdict.

The fact that the State did not prevail in the motion for new trial, standing alone, does not authorize the granting of an extraordinary appeal to review the trial court's action. If it did, then the Tennessee Rules of Appellate Procedure would grant the State an appeal as of right pursuant to Rule 3(c).

We have thoroughly reviewed the documents appended to the State's application. Defendant Coleman was granted a new trial for the same reasons that Defendants Cobbins, Davidson, and Thomas were granted new trials. As previously stated, the State explicitly chose not to seek appellate review as to Defendant Coleman's case. The only difference we can detect in Defendant Coleman's case and those of the other three Defendants is the *degree* of the problems that caused the trial court to render its ruling, not the existence of the problems.

For reasons which we will explain, we therefore conclude that the State's application for extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10 must be denied. While not all of the factual situations leading us to this conclusion are listed below, the most significant ones are as follows.

First, the State and all Defendants entered into a stipulation that statements made by various persons interviewed by Tennessee Bureau of Investigation ("TBI") agents are facts deemed true (in other words, not merely a stipulation as to what these witnesses would say if called to testify). The State reserved objection to some portions of the statements as to relevancy and hearsay. As per the record available before us, the following facts in support of the trial court's ruling exist *as to these proceedings only.*

In this regard, we note that the portion of the TBI reports which were made public records show that former Judge Baumgartner, starting well before the trials in these matters, and continuing through them, was a heavy user of alcohol and legally and illegally obtained

narcotics and that his impairment was suspected by, among others, prosecutors, nurses, law enforcement officers, and court personnel.

In addition, it is clear from the record before us that former Judge Baumgartner explicitly reserved acting as thirteenth juror on Defendant Davidson's convictions of the first degree murders of Christian and Newsom, and as to the resulting death sentences imposed by the jury as to each victim. During Defendant Davidson's sentencing hearing on the non-capital offenses, former Judge Baumgartner stated:

> You are – Mr. Davidson, you are not somebody that should be on the street with the rest of us. You should never, ever, ever be on the street with the rest of us. The jury has determined that you're guilty beyond a reasonable doubt of the first-degree murder of these two young people. They've determined that the appropriate sentence is death. I think – I have a motion for a new trial to go, so I'm going to reserve expressing my opinion on that until we have a motion for new trial. But, in my judgment, there is no sentence great enough to punish you for the conduct that you've been convicted of.

In view of the legal authorities and the reasoning which we have set out, we conclude that this is not a case in which a Rule 10 appeal is appropriate. By this order, we neither affirm nor deny the rulings of the successor trial court but, instead, conclude that the Rule 10 application of the State should be denied. Accordingly, for all of the reasons set forth above, the application for an extraordinary appeal is DENIED. Costs on appeal are taxed to the State of Tennessee.

ALAN E. GLENN, JUDGE

THOMAS T. WOODALL, JUDGE

Dissent by ROBERT W. WEDEMEYER, JUDGE

-7-

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

## STATE OF TENNESSEE v. LETALVIS DARNELL COBBINS, LEMARICUS DEVALL DAVIDSON, and GEORGE GEOVONNI THOMAS

**Criminal Court for Knox County**
**Nos. 86216A, 86216B & 86216C**

No. E2012-00448-CCA-R10-DD



FILED

APR 1 3 2012

Clerk of the Court
Rec'd by

**ROBERT W. WEDEMEYER, J., dissenting.**

Upon consideration of the arguments, transcripts, and record presently before this Court, I respectfully disagree with my colleagues' conclusion that the State's Rule 10 application for extraordinary appeal should be denied. In my view, the State set forth valid arguments on both the thirteenth juror issue and structural error issue to warrant this Court to exercise its discretion and grant extraordinary review pursuant to Rule 10 of the Rules of Appellate Procedure.

### A. Thirteenth Juror

In its Rule 10 application, the State presents a compelling argument, supported by trial transcripts, that Judge Baumgartner fulfilled his thirteenth juror obligation through statements at each Defendant's respective post-trial hearings. The State contends that, because Judge Baumgartner fulfilled the thirteenth juror requirement, Judge Blackwood had neither the legal authority nor the legal obligation to act as the thirteenth juror in any of the three cases. The State concludes that Judge Blackwood's decision to grant a new trial for each of the three Defendants, based on the thirteenth juror rule, was without legal authority and, therefore, presents a valid basis for granting the Rule 10 application for extraordinary appeal. *See State v. McKim*, 215 S.W.3d 781, 791 (Tenn. 2007) (citing *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980) ("This Court has stated that a Rule 10 extraordinary appeal will lie whenever the prerequisites for common law certiorari exist: . . . the trial court's action is without legal authority . . . ."). If Judge Baumgartner did indeed satisfy his

thirteenth juror duty, Judge Blackwood then would have "so far departed from the accepted and usual course of judicial proceedings as to require immediate review." Tenn. R. App. P. 10(a)(1). Because the State presents a valid argument, complete with supporting documents, on the issue, I believe it has satisfied the threshold showing to warrant further proceedings. Therefore, I would grant the State's Rule 10 application for extraordinary review.

## B. Structural Error

After thorough research on this issue, I have concluded that the appropriate legal standard for determining whether there is structural error in a trial is unclear. Further, it is unclear whether the legal reasoning and analysis Judge Blackwood applied in his decision to grant a new trial to each of the three Defendants, based on structural error, constituted the appropriate standard. If the appropriate standard requires, as the State argues, that the Defendants demonstrate a connection between Judge Baumgartner's misconduct and his decisions at trial, then Judge Blackwood applied an incorrect standard, and the Defendants have failed to show that they did not receive fair trials. *See Thurmond v. McKee*, No. 1:06-cv-580, 2009 WL 929001, at *18 (W.D. Mich. Apr. 2, 2009) (". . . even assuming the existence of some due-process principle at work in the present case, that principle would certainly require evidence that the judge's personal problems have had some substantial impact on the fairness of a criminal defendant's trial."). At this point in the appeals process, none of the Defendants have demonstrated any specific instances of bias or unfairness by Judge Baumgartner in their respective trials. Therefore, I would grant the Rule 10 application for extraordinary appeal, ordering that all parties fully brief and orally argue the issue, in order for this Court to properly determine a resolution. Tenn. R. App. P. 10(a) ("[A]n application for extraordinary appeal lies from an interlocutory order of a lower court . . . [i]f necessary for complete determination of the action on appeal . . . .").

## Conclusion

Accordingly, for the reasons set forth above, I conclude that the State's Rule 10 application for an extraordinary appeal should be GRANTED.

ROBERT W. WEDEMEYER, JUDGE

2