IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2020

## STATE OF TENNESSEE v. ELIJAH PAUL WILLIAMS

**Appeal from the Circuit Court for Carroll County**
**No. 19-CR-102      Donald E. Parish, Judge**

### No. W2020-00036-CCA-R3-CD

A Carroll County jury convicted the Defendant, Elijah Paul Williams, of intentionally or knowingly failing to pay child support, and the trial court sentenced him to six months, ninety days of which the Defendant was to serve in confinement. On appeal, the Defendant contends that the trial court lacked subject matter jurisdiction and that he was denied due process of law. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Elijah Paul Williams, Huntingdon, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and James B. Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Facts and Background
### A. Trial

This case arises from the Defendant's failure to pay child support. On May 6, 2019, a Carroll County grand jury indicted the Defendant for knowingly or intentionally failing to provide support and maintenance for his minor child in accordance with an Order filed on May 25, 2017, thereby allegedly committing the offense of failure to comply with child support order in violation to Tennessee Code Annotated section 36-5-104(a).

Leading up to this indictment, the following events occurred: On February 8, 2017, the State filed a notice for the Defendant to appear in court on April 25, 2017, to establish his paternity over the child of Summer M. Springer. On March 17, 2017, the Defendant, pro se, filed a Notice of Special Appearance asking that the court allow him to appear before the April 25 date "to object to the legal authority of the court over the information about" the Defendant. He asserted that the name and date of birth listed on the notice were not legal and that the social security card associated with the number listed did not bear his name. The Defendant filed a second notice on March 31, 2017, stating that the information about him "is believed to be stolen and forwarded to the Carroll County Juvenile Court; without his consent." He further alleged that the Department of Health Services forwarding of his information for the purpose of receiving money "could be in violation of the RICO ACT and other Federal Laws."

On May 9, 2017, the juvenile court continued the case until May 23, 2017. On that same day, the Defendant filed an objection to the order of continuance until the notice of special appearance had been heard and ruled upon.

On May 25, 2017, the juvenile court filed an order declaring that the Defendant was the biological father of, ENS,[1] the child of Ms. Springer. The juvenile court ordered that the Defendant pay child support in the amount of $210.00 per month and that he pay retroactive child support at a rate of $10.00 per month.

On June 6, 2017, the Defendant filed a notice appealing the juvenile court's order pursuant to Rule 4 of the Tennessee Rule of Appellate Procedure. On September 6, 2018, the juvenile court issued a summons commanding the Defendant to appear on September 25, 2018, for a hearing on a petition for criminal contempt for failure to pay child support. On that same day, the juvenile court issued a petition for criminal contempt pursuant to Tennessee Code Annotated section 36-5-104. The petition alleged that the Defendant had failed and refused to pay child support as ordered and was in arrears in the amount of $1,783.92.

On September 25, 2018, the Defendant filed an affidavit that swore that there was no birth certificate listing him as the father and that he believed that child support was a "voluntary act." On that same day, the juvenile court entered an order finding that the Defendant had failed to appear and issuing a warrant for his arrest.

On January 11, 2019, the Defendant filed a "Notice to Certify Right to Subrogation," in the name of "Williams, Elijah, Beneficiary/Creditor" in which he notified the court to "instruct the prosecutor . . . to certify his right to Subrogation." He

---

[1] In order to protect the privacy of the minor child, we will refer to him by his initials only.

said that "Elijah" had a lawful claim over the bond set for $5,000 because the bond is "written in Elijah Paul William[s]'s name (which is Elijah Paul Williams security as Creditor in equity)." The Defendant, writing as his own creditor, asked to use Elijah Paul Williams's bond to "offset" the charge demanding that he pay child support and "close the account."

On January 24, 2019, the juvenile court reduced the Defendant's bond, continued his case, and ordered that he be present for a February 19, 2019 hearing. On January 28, 2019, the Defendant's father filed a petition in the Circuit Court for Carroll County for a writ of habeas corpus on the Defendants behalf. On January 31, 2019, the circuit court stayed the proceedings on the habeas corpus petition until the final decision of the juvenile court. In a separate appeal, the Petitioner contended that the circuit court erred in this regard. In our decision on that appeal, we stated:

> Nevertheless, on January 28, 2019, the Petitioner's father filed a petition for writ of habeas corpus [the filing] alleging that his son, Elijah Paul, was unlawfully restrained by the Carroll County Sheriff. The affidavit attached to the petition and signed by the Petitioner gave his father permission to file on his behalf. *See* Tenn. Code Ann. § 29-21-107 (allowing application of the writ to be made by a person on petitioner's behalf if verified by affidavit). The petition alleged that the unlawful restraint stemmed from the failure to appear at a juvenile court hearing 02/05/2020 concerning failure to pay child support on September 25, 2018, which resulted in a "defective" order for contempt. The Petitioner claimed that he did in fact appear as ordered by the court and that a recording of the court minutes would support his claim. The affidavit also noted several other factual allegations disputing that the Petitioner failed to appear on September 25, 2018. The affidavit further alleged that the Petitioner was taken into custody by sheriff's deputies on January 7, 2019.

> The Petitioner attached four exhibits to his petition: (1) a copy of the court summons for the Petitioner to appear in juvenile court on September 25, 2018, which was personally served on September 20, 2018; (2) a copy of the September 26, 2018 order from the Juvenile Court of Carroll County noting that a hearing was set on September 25, 2018, that the Petitioner's [respondent] attorney was present, that the Petitioner failed to appear after proper service, and further issuing an arrest warrant to secure the presence of the Petitioner in court at the next available date; (3) the attachment order for contempt after proper service; and (4) a handwritten "affidavit of status" filed on September 25, 2018, apparently disputing the action of the juvenile court and claiming, inter alia, "there is no birth certificate naming Elijah

Williams as the father" and that "child support is a voluntary act[.]"

Three days after the habeas corpus petition was filed in the Carroll County Circuit Court, on January 31, 2019, the habeas corpus court reviewed the petition and attached exhibits in camera and determined that the Petitioner was in custody "pursuant to a facially proper process" of the juvenile court and that there was a hearing set on the matter on February 19, 2019. The habeas corpus court therefore entered an order staying the habeas proceedings pending the action of the juvenile court.

Five days later, on February 5, 2019, the Petitioner's father filed a "Notice to Object to Petition for Criminal Contempt, for lack of jurisdiction" and a "Notice to Instruct the court," in the Carroll County Juvenile Court. In this February 5 combined filing, the Petitioner's father appears to argue, as suggested in the habeas corpus affidavit, that the juvenile court had no jurisdiction over Elijah Williams because "child support is voluntary" and the court had no birth certificate naming Elijah Williams as the legal father. Two days later, on February 7, 2019, the Petitioner's father filed a "Petition for a Writ of Mandamus" in the appellate court seeking an order to "command the performance of the Carroll County Circuit Court at Huntingdon to hear the Petition for a Writ of Habeas Corpus in a timely manner." A week after this filing, on February 14, 2019, the Petitioner's father filed a "Notice to Reconsider and hear the Petition filed January 28, 2019[,]" urging the habeas corpus court to hear the petition before the Petitioner's matter was set in juvenile court to determine whether the Petitioner was "lawfully at the Carroll County Jail since January 7, 2019[.]"

A week after the above filing, on February 21, 2019, the Petitioner's father filed in the habeas corpus court yet another "Notice to Hear the Writ of Habeas Corpus," arguing, in pertinent part, as follows:

> On February 19, 2019, the Juvenile court failed to prove that jurisdiction of the subject matter existed; the child support clerk testified that there was no plea agreement signed by Elijah in open court. Therefore, the State of Tennessee . . . does not have an agreement with Elijah Williams; for the court to charge him with criminal contempt. Based on this criminal contempt Elijah Williams was arrested January 7, 2019 and his body taken and put in confinement in the Carroll County Jail; without his consent.

4

Based on its April 15, 2019 order, it appears that the habeas corpus court conducted a hearing in this matter on March 22, 2019. In its order, the habeas corpus court observed that the Petitioner appeared in open court and was not in custody. The habeas corpus court therefore determined the matter was moot and dismissed the petition. It is from this order that the Petitioner now appeals.

*Elijah Paul Williams v. Carroll County Sheriff*, No. W2019-00821-CCA-R3-HC, 2020 WL 582436, at *1-2 (Tenn. Crim. App., at Jackson, Feb. 5, 2020). On appeal the Petitioner claims that the habeas court erred by staying his petition without a hearing, and later by denying his petition as moot. This court concluded that the Petitioner was not entitled to habeas corpus relief because he admitted that he was not in custody at the time of the hearing. We further found that "[n]othing in the record shows that the juvenile court lacked jurisdiction to hold the [Defendant] in contempt for failure to appear to pay child support." Further, the Defendant had not argued that the order of contempt attached to his petition for habeas corpus relief was void, but he had contested his detention as illegal based upon the juvenile court's legal determinations of failure to appear and failure to pay child support. We ultimately concluded that this was not a proper ground for habeas corpus relief. Our decision in this case was filed on February 5, 2020.

The Defendant's father filed another petition asking the circuit court to reconsider whether the Defendant was properly in custody on February 13, 2019, and on February 19, 2019, the trial court bound the case over to determine whether the Defendant should be indicted on a charge of criminal contempt, and, according to our February 5, 2020 opinion, the Defendant was released from custody on February 22, 2019, when his father posted bail. On March 26, 2019, the Defendant filed an "Instruction" to the juvenile court to dismiss the charge against him for lack of jurisdiction.

On May 6, 2019, a Carroll County grand jury indicted the Defendant for knowingly or intentionally failing to provide support and maintenance for his minor child in accordance with an Order filed on May 25, 2017, thereby allegedly committing the offense of failure to comply with child support order in violation to Tennessee Code Annotated section 36-5-104(a).

On May 13, 2019, the Defendant filed another "notice" in which he contended that the court lacked authority to impose a penalty of up to six months in jail because he had not ple[d] guilty to any criminal offense. He filed another document giving "Notice to refrain from prosecuting" him.

On June 6, 2019, a Public Defender began representing the Defendant. He filed a

motion to dismiss the indictment because the statute enumerated in Tennessee Code Annotated section 36-5-104 did not create a criminal offense, so the indictment was defective. The trial court denied this motion.

On December 2, 2019, the trial court held a jury trial on the indictment during which the parties presented the following evidence: Angela Stockdale, the juvenile deputy clerk, testified that her job entailed processing the payments for the child support office, jail orders, subpoenas, and attachments. She said that she was familiar with this child support file, and she was aware that the case had been bound over to the grand jury. Once a case from her office was bound over to the grand jury, the circuit court clerk handled the file.

During cross-examination, Ms. Stockdale testified that she was not present at the hearing when the case was bound over to the grand jury. She also testified that this case began before she began working at the clerk's office.

Lisa Dicus, with the State of Tennessee District Attorney General's Office, Child Support Division, testified that she handled all cases where someone in her area received any type of benefit. Ms. Dicus said that she handled the child support case at the center of this case. Ms. Discus identified the court's order establishing paternity and setting child support, and said that she was present when this order was entered. She said that the Defendant appeared in court that day and filed some motions, which the trial court denied. The Defendant left as soon as the trial court denied his motions and did not stay to hear the juvenile court's ruling. He left without filling out an affidavit of income and expenses.

Ms. Dicus said that, after the Defendant left, the court entered a child support order against him. Ms. Discus said that she had researched the Defendant's last quarter of earnings, and his child support contribution order was based upon this those earnings. The order was based upon a standard calculator used by the child support office. Ms. Discus reviewed the paperwork and testified that the Defendant's monthly income was $965 and the child's mother's monthly income was $900. Using the parties' standard visitation schedule of 285 days and 80 days, the Defendant's child support obligation was calculated to be $210 per month. He was additionally ordered to pay back child support in the total amount of $630, at $10 per month, bringing his total monthly obligation to $220.

During cross-examination, Ms. Dicus testified that her research did not show whether the Defendant's income was intermittent; it only showed his last quarter's earnings.

Jeanie Mann, with State of Tennessee Child Support Enforcement, testified that she monitored cases once an order has been established to ensure that a party is paying as ordered. If a party had not been paying, she prepared the case for any kind of enforcement action that was necessary. Ms. Mann testified that her office used the Tennessee Child Support Enforcement System, an electronic system, to determine whether child support payments were being made. The system monitored the payments that were being received, including garnished wages, and notified her if there was a failure to submit payments in any particular case.

Ms. Mann said that the system notified her that an enforcement action was necessary in the Defendant's case because payments were not being received. Ms. Mann said that the Nashville division over her office sent the Defendant a notice of his arrears balance with a notification that such would be reported to the credit bureau. She said that one of the documents was refused with a notice to return it to sender. The other document was also returned to sender. Both items were returned to her office, despite having been sent from Nashville.

Ms. Mann explained that the Nashville office also sent the Defendant "coupons" that told him the current child support obligation that was due; the amount of child support that was due toward the retroactive support; with a line for him to return the bottom portion of the coupon with his payment. The "coupon" also contained the docket number, the payment due date, the total amount due, the Court ID, the location of where to mail the payment, along with the Defendant's name and his "member number." This coupon was sent to the address that the office had on file for the Defendant.

Ms. Mann said that, once she learned that the payments were missed and she received notification from the child support enforcement system, she prepared the case with a petition for criminal contempt, which was filed in the juvenile court. She prepared a summons, which was signed by Marsha Jones, who was an attorney at the District Attorney's office. Ms. Mann said that the summons was served upon the Defendant at the address for him that her office had on file, and he appeared in the juvenile court. Based upon the evidence presented during that hearing, the case was bound over to the Carroll County grand jury.

Ms. Mann identified a copy of the Defendant's payment history, which began on June 1, 2017. The Defendant did not make payments in June or July of 2017, but the office began receiving payments when his wages were garnished. She identified multiple payment dates that were made and multiple payment dates that were missed.

The court reminded the jury that it was tasked to determine whether the Defendant knowingly or intentionally did not provide support for ENS during the time period of

7

June 25, 2018 to September 4, 2018. It instructed that any additional missed payments could not be held against him and were only relevant to the question of whether his failure to make payment, if he did fail to make a payment, was knowing or intentional.

During cross-examination, Ms. Mann testified that the enforcement system is designed to work automatically, so when an employer is loaded into the system, the system automatically sends a wage garnishment to the employer of record. She agreed that the employer of record in this case was a "temp agency," meaning that the Defendant's employment may have been sporadic. She also agreed that, after the two-month failure to pay that was the subject of the contempt action, the payments resumed.

The Defendant testified that he had been laid off in July and August 2018. During cross-examination, the Defendant said that during July and August 2018 he may have helped his father, who was an entrepreneur. In exchange, his father "fed" him. He lived with his father at the time, so he had a place to live, with utilities, and food during that time frame. The Defendant said that he did not pay any child support because "he didn't know he had child support."

The Defendant said that he went to the hearing that he was summonsed to for a child support issue. He said, however, the trial court told him to leave because he "had no business there if [he] wasn't who he said he was." The Defendant said that he never got a copy of the child support order. The Defendant further explained that he had received mail about child support but said he did not know that he owed child support.

The Defendant agreed that his employer garnished his wages, but he said that he believed that those were "donations" that he allowed because his employer told him that it would fire him if he did not allow the "donations."

The jury convicted the Defendant for intentionally or knowingly failing to pay child support. The trial court sentenced him to six months, and it ordered the sentence suspended to unsupervised probation after the Defendant served ninety days in confinement.

## II. Analysis

On appeal, the Defendant contends that the trial court did not have subject matter jurisdiction to render the judgment "as original" and that he had been denied due process of law. He appears to argue that the juvenile court, and not the circuit court, had jurisdiction to hear this issue, making his judgment "facially invalid." About the due process allegation, the Defendant contends that he was not notified that he would go to jail if he failed to pay child support. He states that: "The prosecutor has the responsibility

to show and prove on the record that [the Defendant] was notified of the consequences of going to jail, if he failed to pay Child Support as ORDERED." He further contends that, if the prosecutor cannot so prove, then the Defendant's due process rights should be deemed violated.

The State counters that the trial court properly exercised jurisdiction over the State's prosecution of the Defendant for the criminal offense of failure to pay child support. The State further contends that the Defendant has waived our review of the issue of whether his due process rights were violated.

## A. Subject Matter Jurisdiction

Defects which may be challenged at any time during the pendency of the proceedings include objections which challenge lack of jurisdiction in the court and those objections contending that the indictment failed to charge an offense. *State v. Nixon*, 977 S.W.2d 119, 120-21 (Tenn. 1997). "Lack of jurisdiction" refers to subject matter jurisdiction which a defendant has no power to waive. *Id.* (citing *Pon v. U.S.*, 168 F.2d 373, 374 (1948) (interpreting Rule 12 of the Federal Rule of Criminal Procedure, which is virtually identical to our Rule 12)); *see also State v. Seagraves*, 837 S.W.2d 615, 618 (Tenn. Crim. App. 1992). Subject matter jurisdiction is the power of the court to hear and decide a particular type of action. In the present case, the Circuit Court of Carroll County has exclusive original jurisdiction of criminal offenses. *See* T.C.A. § 16-10-102 (2009) (stating "The circuit court has exclusive original jurisdiction of all crimes and misdemeanors, either at common law or by statute, unless otherwise expressly provided by statute or this code.").

In this case, the grand jury indicted the Defendant for the offense of failing to comply with the child support custody order pursuant to Tennessee Code Annotated section 36-5-104(a). That code section states:

(a) Any person, ordered to provide support and maintenance for a minor child or children, who fails to comply with the order or decree, may, in the discretion of the court, be punished by imprisonment in the county workhouse or county jail for a period not to exceed six (6) months.

(b) No arrest warrant shall issue for the violation of any court order of support if such violation occurred during a period of time in which the obligor was incarcerated in any penal institution and was otherwise unable to comply with the order.

(c) In addition to the sanction provided in subsection (a), the court shall

9

have the discretion to require an individual who fails to comply with the order or decree of support and maintenance to remove litter from the state highway system, public playgrounds, public parks, or other appropriate locations for any prescribed period or to work in a recycling center or other appropriate location for any prescribed period of time in lieu of or in addition to any of the penalties otherwise provided; provided, however, that any person sentenced to remove litter from the state highway system, public playgrounds, public parks, or other appropriate locations or to work in a recycling center shall be allowed to do so at a time other than such person's regular hours of employment.

(d) In any proceeding to enforce child support, the court may apply an inference that the obligor had the ability to pay the ordered child support as set forth in § 36-5-101(a)(8).

T.C.A. § 36-5-104(a).

In *Brown v. Lantham*, 914 S.W.2d 887, 888 (Tenn. 1996), the Tennessee Supreme Court addressed whether a person charged with violating Tennessee Code Annotated section 36-5-104(a) is entitled to a jury trial. The *Brown* court concluded that section 36-5-104(a) describes a criminal offense that is the equivalent of a misdemeanor and entitles a person charged with its violation to a jury trial. *Id.*; *see also Ahern v. Ahern*, 15 S.W.3d 73, 82 (Tenn. 2000).

In accordance with this law, we conclude that because the circuit court has jurisdiction over all crimes and misdemeanors and because this code section describes a criminal offense, the circuit court in this case had subject matter jurisdiction. The grand jury properly indicted the Defendant, the Defendant was properly notified of the indictment against him, and the circuit court had jurisdiction to hear the jury trial and enter the judgment of conviction. The Defendant is not entitled to relief on this issue.

## B. Due Process

The Defendant next contends that he was denied due process of law because he was not aware that he would go to jail if he failed to pay child support. The State thoroughly refutes this argument, claiming first that the Defendant waived the issue, next that he is not entitled to plain error review, and finally that he had adequate notice because of the sufficiency of the indictment. We agree with the State on all accounts, but hold that the Defendant has waived this issue.

We have repeatedly reminded appellants that the Rules of Appellate Procedure

require that briefs include "[a] statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record." Tenn. R. App. P. 27(a)(6). The Defendant's statement of facts has no corresponding citation to the record. The rules of this court direct waiver of issues not supported by citation to authorities or appropriate references to the record. *See* Tenn. R. Ct. Crim. App. 10(b). The Defendant also waived the issue by failing to raise the issue in his motion for new trial. Tenn. R. App. P. 3(e). The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE